*For affirmance*—-BEASLEY, C. J., BEDLE, DALRIMPLE, DE-PUE, VAIL, VREDENBURGH, WALES, WOODHULL.    8.

*For reversal*—-CLEMENT, KENNEDY, OGDEN, OLDEN.    4.

---

### CUTLER, appellant, and TUTTLE, respondent.

1. Where the defendant neglects to make the objection by plea, answer, or demurrer, of the want of parties who are only necessary to protect him from further litigation, the court in its discretion may refuse to sustain the objection at the hearing, or to require the complainant to add new parties in that stage of the suit. The bill cannot be amended by adding such parties in this court, and the record will not be remitted for that object when no purpose of substantial justice will be thereby answered.

2. It is a settled principle that where one person purchases property for a stranger, and the purchase money is paid by the stranger, or out of his funds, although the title is taken in the name of the person making the purchase, a trust results, and the land is held in trust for the person whose money is paid. This trust arises without any declaration in writing.

3. Such rule also prevails where the consideration proceeds from two or more persons jointly ; and a resulting trust will arise in proportion to the amount of the consideration which they have respectively contributed.

4. When the trust is sought to be raised as a resulting trust from the payment of the purchase money, the proof must be very clear of the payment of the purchase money by the person in whose favor a trust by implication of law is sought to be raised. The fact must be distinctly established by satisfactory evidence.

5. A resulting trust will not be held to arise upon payments made in common by one asserting his claim, and the grantee in the deed, where the consideration is set forth in the deed as moving solely from the latter, unless satisfactory evidence is offered exhibiting the portion which was really the property of each, and establishing the fact that the payment was made for some specific part or distinct interest in the estate.

6. Where there is a resulting trust, it must arise at the time of the execution of the deed ; it cannot be raised from subsequent matter arising *ex p. st facto.*

· 7. A conveyance designed in fraud of creditors, will not be declared a resulting trust in favor of a party thereby seeking to be benefited.

This cause was argued in the Court of Chancery upon the pleadings and proofs. The Chancellor delivered the following opinion: *

The complainant charges that the defendant attended, as her attorney and agent, a partition sale of lands, of which she was a tenant in common, and purchased three lots for her; that he purchased the three lots for her at the sale for $2491, and took a deed in his own name, but paid for them by giving to the commissioners, receipts and discharges for the sums due to her for her own share and that of her sister, Jane C. Anderson, whose share she had purchased pending the partition proceedings. The amount due for these two shares out of the net proceeds of sale was $2305.82; the residue, $185.18, was advanced by the defendant as a loan to her. She alleges, that the property, being bought for her, and paid for by her money, is held in trust for her, and prays that the defendant may be required to convey it to her.

The defendant, in his answer, denies that he attended the sale as her agent or attorney, or that she requested him to purchase for her. He admits, that at the sale her brother, Daniel L. Tuttle, requested him to purchase these lots for him and the complainant jointly, and that he purchased them in compliance with that request for the benefit of both; he admits, that the property was paid for by the receipts of the complainant and Jane C. Anderson for the amount stated in the bill, and that he advanced the residue as a loan. He

---

*The opinion of the Chancellor in this cause was mislaid soon after its delivery, (in February Term, 1868), and only came into the hands of the Reporter just as the opinion of the Court of Appeals was about to be sent to press. It is accordingly published here, in order to a clear and intelligible report of the case.

Cutler *v.* Tuttle.

states, that the lands conveyed to the complainant by her sister, were conveyed to and held by her in trust for her brother Daniel, and that the receipt for that share, which was given to the commissioners, was payment of so much, or one half the consideration, by the money of Daniel; and he sets up, that Daniel claims and insists that he is entitled to have one half conveyed to him; and offers to convey to the complainant and Daniel L. Tuttle as tenants in common, upon being repaid the sum paid by him, with interest, and some other moneys due from them to him.

If the defendant purchased these lots at the request of the complainant, and paid for them with her money, he holds in trust for her; if he purchased for her and her brother, and paid with moneys belonging to both, he holds in trust for both; and if he purchased at Daniel's request for both, and paid for them with complainant's money, he holds in trust for her.

The statute of frauds makes void any express trust not declared by writing, but permits all trusts arising by implication of law, or resulting trusts. No parol agreement of the defendant to buy or hold in trust for either, would create a trust. But if the property was paid for with the money of either, a trust would arise by operation of law. The real question in this case is, whether the share of Jane C. Anderson belonged to the complainant in her own right, or she held it in trust for her brother Daniel. The contest is not between the complainant and the defendant, who claims no interest in the property beyond his lien for advances, but with the utmost propriety of conduct in his situation, puts his defence on the ground that Daniel claims one half the property as purchased with money that belonged to him, a fact which the defendant understood at the time of the purchase by him, and still believes to be true.

Daniel L. Tuttle ought to have been a party to this suit, but the objection was not made by demurrer, or in the answer, nor yet at the opening of the argument, and then, at the latest, the objection must be made if raised by the de-

fendant.   The court may, if convinced that the rights of the
parties cannot be settled without that course, order the cause
to stand over that other parties may be brought in.   In the
view I take of this case, the rights of the parties as between
themselves, can be settled in the case as it is.    If that view
is wrong, and Daniel, not being a party to the suit, and not
bound by it, brings suit against either and recovers, the con-
sequence is due to the omission of such party to have him
made a party to this suit.

John C. Anderson, and Jane his wife, on the 16th of
February, 1863, pending the proceedings in partition, con-
veyed one third, the share of Jane C. Anderson in the whole
of the property of which partition was sought, being seven
or eight lots, to the complainant.   The price mentioned in
the deeds was $1440.   Daniel L. Tuttle claims that this price
was paid by him.   If it was, then complainant held in trust
for him.    But for this purpose it is necessary that the pay-
ment by him should have been made at the time of the convey-
ance, or that he should have become bound, or secured to the
grantor the purchase money.    Any payments afterwards
made of or upon it, or any expenses on the property after-
wards, cannot create a resulting trust.

The evidence to prove the payment of the consideration
by Daniel, is that of John C. Anderson and his wife Jane.
They should know.   Each of them appears to swear to it,
but in such manner as to show that they have no recollection
of where, when, or how it was paid, or in fact if any was
paid at all on these lots by Daniel, at the time of the con-
veyance.    On the contrary, it satisfactorily appears from the
evidence, that at the time of the conveyance of this share by
Jane C. Anderson to the complainant, she gave to Mrs.
Anderson and her husband her bond for $1200, secured by a
mortgage upon her own third of the property conveyed, and
of the third conveyed by Mrs. Anderson, and also gave her
note for $220, which was afterwards paid.    The mortgage,
too, was afterwards assigned by the Andersons to a Mr.
Harrison, and was satisfied and canceled.    By whom the

note and mortgage were paid does not clearly appear, and is of no consequence here. If they had been paid by Daniel it would not support a resulting trust. It then satisfactorily appears that the whole consideration of this conveyance, except $20, was secured by the personal obligations of the complainant, and not paid or secured by Daniel L. Tuttle. And if $20 of the consideration had been shown to have been paid by him, it would not suffice to raise a trust for him. The evidence of both the Andersons is given with great inaccuracy and confusion. They are evidently anxious to recollect and disclose everything which they suppose will aid Daniel, and mix up what they believe and have heard with regard to the matter with what they know, and depose to the whole in one mass. And the defendant has failed to make them distinguish what they know, from what they merely believe. The result is that no reliance can be placed on any part of their testimony to show that the consideration or any part of it was paid by Daniel at the delivery of the deeds.

I am of opinion that the complainant is entitled to have these lots conveyed to her, upon paying to the defendant the amount advanced by him at the purchase as a loan, with the interest thereon from that time.

From a decree made in accordance with the foregoing opinion, the defendant appealed.

*Mr. C. Parker*, for appellant.

*Mr. Vanatta*, for respondent.

The opinion of the court was delivered by

Depue, J.

The respondent (the complainant below) filed her bill in the Court of Chancery, to obtain a conveyance to her by the defendant of three several lots of land, situate in the county

of Morris, for which the defendant obtained the legal title by a purchase at a sale, made by commissioners appointed to make partition of certain lands which had descended to the complainant, and Daniel L. Tuttle, and Jane C. Anderson, as heirs-at-law of Hannah Tuttle, deceased.

The facts of the case are briefly these: At the death of the said Hannah Tuttle, certain lands and real estate, whereof she died seized, descended to her children and heirs-at-law, Daniel L. Tuttle, Jane C. Anderson, wife of John C. Anderson, and the complainant, who was then the wife of Adolphus Stewart. After the death of Mrs. Tuttle, the estate of Daniel L. Tuttle, in the lands whereof his mother died seized, was sold under an execution on a judgment against him, and was purchased at sheriff's sale by one John S. Smith, who, subsequently, made application to a justice of the Supreme Court for the appointment of commissioners to make partition; and such proceedings were thereupon had, that the commissioners were directed to make sale of a portion of said lands.

At the sale, the three lots in question in this suit were struck off and sold to Cutler, the appellant.

The bill charges that the defendant, prior to the commencement of the proceedings for partition, had been the legal adviser of the complainant; and that he acted as her attorney in the said proceedings for partition; and that she confided her interests in the same to his care and management; and that the purchase of the three lots of land in question at the commissioner's sale, was made by the defendant for the complainant's use and benefit; and that the consideration money paid by him to the commissioners for the conveyance, was paid with the moneys that belonged to the complainant, the deeds being made to the defendant, because the complainant was then a married woman, upon the understanding that he should hold the same as trustee for the complainant, until she should be divorced from her husband, and that he should then convey to her in fee simple.

The defendant, in his answer, does not claim to hold the

premises for his own benefit. He admits that he purchased and took a conveyance in his own name, not with a view of becoming himself the ultimate owner in his own right. His insistment is, that he attended the sale with no intention of buying the property, and that while there Daniel L. Tuttle applied to him to purchase the said three lots, being the homestead of his mother, for a home for himself and his sister, the complainant; and that he induced the defendant to purchase the same upon the understanding that the defendant was to be reimbursed what he should expend in purchasing the same, and for the amounts that were due to him for services and money expended in the different suits and controversies, in which he had been engaged as proctor, solicitor, and attorney for the heirs-at-law. And he proffers himself ready and willing to convey the premises to the complainant and Daniel L. Tuttle, whenever he can do it with safety to himself, and without involving himself in further litigation, upon receiving the amount due to him from the complainant and Daniel L. Tuttle.

Aside from the question of proper parties to this suit, the only question discussed by counsel was, whether the defendant holds the title in trust for the complainant and Daniel L. Tuttle jointly, or for the complainant alone.

The defence is in the nature of an interpleader, and involves a question between persons, one of whom is not a party to this suit. That question is distinctly presented in the defendant's answer, and is the sole point to which the testimony in the cause was directed. It is also referred to in the complainant's bill as the question upon the determination of which her right to relief would probably depend. In the decision of the question upon which this suit must hinge, Daniel L. Tuttle's rights are involved, and must be passed upon by the court. His interests, to a certain extent, are also liable to be affected by the decree made in this suit. A decree of this court, directing a conveyance by his trustee of the entire estate to his alleged *co-cestui que trust*, leaving him only his remedy *in personam* against the trustee, or by

following the trust estate in the hands of the complainant, where it may be subjected to the equities of *bona fide* purchasers or encumbrancers from her, may seriously embarrass him in the prosecution of his rights in the premises. That, upon the case as here disclosed, he has no rights, is not an answer to the objection. The objection is, *in limine*, that he is not here as a party having an opportunity to present his claim, and adduce his evidence in support of it. The reason of the rule requiring all persons interested in the subject of the controversy to be made parties to the suit, grows out of the constitution of a court of equity, which aims not so much to decide the issues between the litigating parties, as to embrace the whole subject and determine upon the rights of all parties interested, to make the determination complete and quiet all questions, so that the performance of the decree may be perfectly safe to those who are compelled to obey it, and also that future litigation may be prevented. *Calvert on Parties* 5 ; *Story's Eq. Pleadings*, § 72, 76 ; *Caldwell* v *Taggart*, 4 *Pet.* 190.

It is not, however, an insuperable obstacle in the way of proceeding to a final decree, that all persons who should be parties to enable the court to adjust and determine all conflicting interests in the subject matter, have not been made parties to the suit. Where the defendant neglects to make the objection by plea, answer, or demurrer, of the want of parties who are only necessary to protect him from further litigation, the court, in its discretion, may refuse to sustain the objection at the hearing, or to require the complainant to add new parties in that stage of the suit. *Dias* v. *Bouchaud*, 10 *Paige* 447.

But the rule requiring the presence before the court of all parties interested, being essential to enable the court to make that complete and final disposition of the subject matter of the controversy, at which courts of equity always aim, will not be overlooked, if the objection is taken at any stage of the cause, unless for cogent reasons. Such reasons exist in this case. The objection to the non-joinder of Daniel L·

Cutler *v*. Tuttle.

Tuttle was not taken in the Court of Chancery until the argument of the cause on final hearing was being progressed with. The defendant, by raising the objection by plea or answer, could have compelled the complainant to bring Daniel L. Tuttle in as a party. He was at liberty, instead of adopting that precaution against being harrassed by future litigation at the suit of Daniel L. Tuttle, to take upon himself the burthen of defeating the complainant's suit, by setting up and establishing the rights of Daniel L. Tuttle in the premises. He chose to hazard his rights upon the issue of success, fully maintaining the rights of the absent party, instead of adopting such means as were at hand to afford him the most adequate protection in this suit, whatever its issue might be. Upon these circumstances alone, we might hesitate to refuse to give effect to the rule as to the presence of all parties interested, before the court proceeds to the determination of the cause. A regard for the rights of the absent party is embraced within the reasons of the rule. An examination of the testimony in the cause, removes all hesitation on that ground. Daniel L. Tuttle attended the examination of the witnesses before the master; he was represented there by counsel selected by himself to look after and protect his own interests; he selected the witnesses he desired to have called, and subpœnaed them, and paid their fees for attendance, and their examination was conducted by his own counsel ; he had as ample an opportunity for putting his case before the court as he would have had if he had been made a party, except that he has not had the benefit of an answer. That he who, of all others, could have spoken to the merits of the case, did not offer himself as a witness, indicates that he did not have within his own knowledge, any facts that would support the claim which is interposed in his behalf. As will be seen presently upon the evidence, his claim is without foundation. It is true that he will not be concluded by the decree in this cause, and that his right to relief, against the complainant or the defendant, will not be affected by our decision. The complainant, if she desired to conclude him, might have

3 A *

made him a party to the suit.   The defendant, if he desired
to be protected from future litigation, might have compelled
his appearance in this suit.   He had the means within his
control to make himself a party and participate in this litiga-
tion.   The amendment cannot be made in this court.   Under
these circumstances, with the case fully before us, to reverse
and remit the record to the Court of Chancery, for the pur-
pose of giving either of these parties a protection, that at a
proper stage of the cause either might have had, against a
future litigation which, in all probability, will never arise,
will not answer any purpose of substantial justice.

Passing from the question of proper parties to the con-
sideration of the merits of the case, it is a settled principle,
that where one person purchases property for a stranger,
and the purchase money is paid by the stranger, or out of
his funds, although the title is taken in the name of the
person making the purchase, a trust results, and the land is
held in trust for the party whose money is paid.   This trust
arises without any declaration in writing, for it is expressly
excepted by the statute of frauds from the operation of that
statute, and the facts, necessary to constitute such trust,
may be proved by parol evidence.   *Johnson* v. *Dougherty*, 3
*C. E. Green* 406.   A similar rule prevails in cases where
the consideration proceeds from two or more persons jointly.
A resulting trust will arise in proportion to the amount of
the consideration which they may have respectively con-
tributed.   *Hill on Trustees* 92.

The right of the complainant to the relief she obtained in
the Court of Chancery, will depend upon whether the con-
sideration money of the conveyance to the defendant, by the
commissioners, was her money, or in part the money of
Daniel L. Tuttle.   The sale was made on the 20th of March,
1863.   Pending the proceedings for partition, and before
the day of sale, Mrs. Anderson, by two deeds of conveyance,
which bear date in the month of February, 1863, granted
and conveyed all her right, title, and interest in the several
lots whereof partition was applied for, together with four

other lots, to the complainant, for an aggregate consideration of $1440, expressed in the said deeds. This conveyance having been made pending the proceedings for a partition, those proceedings were conducted to their termination in the name of Mrs. Anderson, as a co-tenant in common, holding an equal one-third interest in the premises; and, in the decree of distribution, the one-third part of the net proceeds of the sale, amounting to the sum of $1152.91, was directed to be paid to her, and the like share to the complainant, as representing their respective interests, as original co-tenants in common of the premises.

The aggregate amounts of the sums for which the three lots in question were sold to the defendant at the commissioners' sale, was $2491. It was paid by him, by the delivery to the commissioners of the receipts and releases to them of the complainant and of Mrs. Anderson for their respective distributive shares of the proceeds of the sales, amounting together to the sum of $2305.82; and the balance of $185.18, was paid by the defendant out of his own funds. For so much of the sum advanced by the defendant as remains unpaid, he has a lien upon the premises, and cannot be made to convey them until he is satisfied and paid the amount still due to him with interest thereon. To the extent of the amount represented by the complainant's own receipts to the commissioners, the defendant admits he holds the lands in trust for her benefit. By the production of the deeds of conveyance from Mrs. Anderson to her—the execution and validity of which are not disputed—the complainant establishes her right to the share of Mrs. Anderson in the proceeds of the sales, sufficient to raise a resulting trust for her benefit, to the extent of so much of the consideration as is represented by that receipt. The defendant insists that these deeds, though absolute on their faces, were in reality made to the complainant for the benefit of Daniel L. Tuttle. No declaration of trust in favor of her brother was made in writing. If he is entitled to claim the benefit of the conveyances, he must have acquired that right by reason of his having paid

the consideration upon which they were made. The payment must have been made as the consideration of the purchase, and not by way of a loan, and must have been made at the time of the making of the deeds; and the burthen of establishing that by proof is on the defendant. The evidence bearing on this point, fails entirely to come up to the standard required by the law. . Independent of the statute of frauds, parol evidence to raise an express trust against the terms of a written instrument, is received with great caution, and must be clear to warrant a court in establishing a trust. *Sayre* v. *Fredericks*, 1 *C. E. Green* 205. In cases within the statute of frauds, when the trust is sought to be raised as a resulting trust from the payment of the purchase money, the proof must be very clear of the payment of the purchase money by the person in whose favor a trust by implication of law is sought to be raised. The fact must be distinctly established, by satisfactory evidence. *Gascoigne* v. *Thwing*, 1 *Vern.* 366; *Willis* v. *Willis*, 2 *Atk.* 71; *Groves* v. *Groves*, 3 *Y. & J.* 170; *Malin* v. *Malin*, 1 *Wend.* 625. On the day the deeds bear date, a bond and mortgage for the sum of $1200, and a note for $220, were made by the complainant, and delivered to Mrs. Anderson. The mortgage was upon other lands of the complainant, in addition to those conveyed to her by Mrs. Anderson, and though executed by the complainant when under the disability of coverture, was nevertheless good as a charge upon her separate estate. *Wilson* v. *Brown*, 2 *Beas.* 277; *Harrison* v. *Stewart*, 3 *C. E. Green* 451. The mortgage and note were both in fact paid and satisfied; the competent evidence of which is the cancellation of record of the mortgage, the certificate whereof is endorsed on the mortgage, and the receipt of Mr. and Mrs. Anderson, acknowledging the payment of the note. The amount of the two is only $20 short of the consideration of the deeds. It is admitted by Mr. and Mrs. Anderson—the witnesses on whom the defendant relies—that the mortgage and note were given in connection with the purchase of Mrs. Anderson's interest in the land. Taken in connection with

the acknowledgment of the payment of the consideration by the complainant contained in the deeds, the giving of the note and mortgage is plenary evidence that the whole of the consideration of the conveyance made by Mrs. Anderson to the complainant, excepting $20, was paid with the obligations of the complainant herself. The force of that evidence is not overcome by the testimony of Mr. and Mrs. Anderson. Their statements are so vague and uncertain, as not to afford that degree of proof which is required to establish a resulting trust, contrary to the terms of a written instrument. They speak of the consideration, being the sum of $2000; in that, however, was included the price of the school-house lot which they conveyed directly to Daniel, which was some $500 or $600. They both speak with great indefiniteness as to the amount of money which was paid when the deeds were made. Mrs. Anderson does not name any sum. Her husband, in his examination in chief, in answer to the question as to how much money was paid at the time the deeds were given, says it had gone out of his mind how much money was paid, but that there was enough money paid to make up the amount with the mortgage, but he could not tell what the amount was; on his cross-examination, he says his impression is that it was $1100. The production of the mortgage and note shows that the amount then paid was not above the sum of $580—a small sum above the purchase money of the school-house lot, which was conveyed directly to Daniel.

There is no doubt that payment of part of the purchase money will create a resulting trust to the extent of that payment, but the amounts paid by the different parties must be shown with certainty, and a resulting trust will not be held to arise upon payments made in common, by one asserting his claim, and the grantee in the deed, when the consideration is set forth in the deed as moving solely from the latter, unless satisfactory evidence is offered, exhibiting the portion which was really the property of each, and establish-

ing the fact that the payment was made for some specific part or distinct interest in the estate.   *Baker* v. *Vining*, 30 *Maine* 121; *Sayre* v. *Townsend*, 15 *Wend*. 647; *McGowan* v. *McGowan*, 14 *Gray* 119; 1 *Leading Cases in Eq*. 276.

In this case, the testimony relied on is unsatisfactory as to the question, whether any, and if so, what portion of the consideration money of the conveyance by Mrs. Anderson, was the property of Daniel L. Tuttle; and is too unreliable to justify the court in divesting a title, evidenced by a deed of conveyance, in favor of a person whose claim is rested on the uncertain foundation of parol proof.

The evidence touching the payment by Daniel L. Tuttle, of the mortgage and note given by the complainant, is equally uncertain and unreliable.   It is not necessary to consider that question.   Where there is a resulting trust, it must arise at the time of the execution of the deed; it cannot be raised from subsequent matter arising *ex post facto*.   *Hill on Trustees*, 97; *Rogers* v. *Murray*, 3 *Paige* 390; *Botsford* v. *Burr*, 2 *Johns*. *Ch*. *R*. 405; *Steere* v. *Steere*, 5 *Johns*. *Ch*. *R*. 1.

The reasons assigned, on behalf of Daniel L. Tuttle, for putting the title in the complainant instead of taking the title in his own name is, that he was then embarrassed in his circumstances and harassed by his creditors.   If the motives which induced the conveyance to Mrs. Stewart was to cover up his property from creditors, to hinder and defeat them in their demands, that object would deprive him of all right to have the conveyance declared a resulting trust for his benefit.   No principle of law is better settled in this state than that a conveyance, designed in fraud of creditors, is good *inter partes*.   In this court, in *Baldwin* v. *Campfield*, 4 *Halst*. *C*. *R*. 891, it was held, that the implication of law, that the grantee takes a conveyance in trust for a person who furnishes the purchase money, may be rebutted by proof that the title was put in the grantee for the purpose of protecting the property from creditors of him who furnished the purchase money.

The decree of the Chancellor is affirmed, with costs.

*For affirmance*—BEASLEY, C. J., BEDLE, DEPUE, ELMER, CLEMENT, KENNEDY, OGDEN, OLDEN, VAIL, VREDENBURGH, WALES, WOODHULL—12.

*For reversal*—DALRIMPLE.