Lutjen *v.* Lutjen.

HELENE LUTJEN et al., appellants,

*v.*

HENRY E. LUTJEN, respondent.

[Filed November 17th, 1902.]

1. A legatee, aged twenty-three years and upwards, being at that age entitled to be paid a balance of a legacy (which had been reduced in consequence of the birth of after-born children of the testator) on October 21st, 1891, after the final accounting of the administratrix, C. T. A., of the estate of the deceased, in the orphans court, and a settlement with her, executed to her his formal deed of release, reciting, *inter alia*, that it was meant for an absolute release of all his right to the real and personal estate of the deceased, and then received from her a considerable payment of money, not apparently inadequate, estimated by the surrogate (to whom the parties had left the calculation) to be the correct balance due upon the legacy. He had a full understanding of the contents of the instrument before he signed it and was under no legal or mental, or other disability or impediment. On May 28th, 1901, nearly ten years afterwards, he filed his bill of complaint and commenced the present suit to avoid the release, alleging that it had been obtained from him by the fraud of the administratrix, but not alleging any mistake, either mutual or unilateral. Fraud was not shown, but the amount of the consideration, which depended on doubtful questions both of law and of fact, may have been inadequate.—*Held*, that he had been guilty of laches sufficient to defeat his suit.

2. The rule, as declared by Vice-Chancellor Green, in the third headnote to the case of *Tynan* v. *Warren*, reported in 8 *Dick. Ch. Rep. 313,* "that laches in bringing suit will deprive one of his remedy is not applied, unless such neglect has so prejudiced the other party, by loss of testimony, or means of proof or changed relations, that it would be unjust to now permit him to enforce his rights," criticised and distinguished.

3. Lapse of time alone is deemed to be a sufficient ground of estoppel in cases like the present, when the court cannot feel confident of its

ability to ascertain the truth now as well as it could when the subject for investigation was recent, and before the memories of those who had knowledge of the material facts have become faded and weakened by time. To constitute estoppel of this description, it is not essential that any actual loss of testimony through death or otherwise, or means of proof or changed relations, to the prejudice of the other party, should be proved to have occurred.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *18 Dick. Ch. Rep. 391.*

The bill of complaint was filed May 28th, 1901, praying the court of chancery to declare void a certain deed of release, dated October 21st, 1891, executed by the complainant to defendant, Helene Lutjen, as administratrix *cum testamento annexo* of J. H. Lutjen, deceased, charging that she obtained same from him by fraud, and asking that she be decreed to account to and pay him an alleged unpaid balance of money due him beyond, and in addition to, the $5,000 already paid and mentioned as the consideration for the release, and that such balance be charged upon the real estate of the deceased. The bill sets forth a copy of the release, in which are recited the following pertinent facts:

"Know all men by these presents, Whereas, John H. Lutjen, late of the county of Hudson, deceased, in and by his last will and testament, which has been legally proved, did give and bequeath to Henry Edward Lutjen, his son, the sum of tén thousand dollars, and all the rest, residue and remainder of his estate to Helene Brummerloh, who afterwards became his wife; *and whereas*, two more children were born to John H. Lutjen, deceased, subsequent to the making of the said last will and testament of said deceased, and for which children no provisions were made by said deceased, in and by his said last will and testament; *and whereas*, letters of administration with the will annexed of the estate of said deceased, were issued to Helene Lutjen; *and whereas*, the said administratrix filed an account of the administration of said estate in the surrogate's office of the said county, from which said account it appears that the balance of personal estate remaining in the hands of said administratrix is the sum of twelve thousand two hundred and sixty-three dollars and twenty-one cents ($12,263.21), out of which sum there is to be paid to the children of the testator, born subsequent to the date of said will, four-ninths thereof; *and whereas*, Henry Edward Lutjen, above named, has now attained the age of twenty-three years, the date of which legacy aforesaid is to be paid. Now in consideration of the premises and of the sum of five thousand dollars, to me in hand paid by Helene Lutjen, the administratrix aforesaid, the receipt of which is hereby acknowledged,

I, Henry Edward Lutjen, hereby remise, release and discharge, and by these presents have remised, released and discharged Helene Lutjen and her heirs and assigns, and the estate of John J. Lutjen, deceased, of and from all claim and demand which I ever had or now have, or which I or my heirs or assigns hereafter can or may have against her, the said Helene Lutjen, or the estate of said John H. Lutjen, deceased, by reason of the legacy of ten thousand dollars given and bequeathed to me in and by said will of the testator, or for or by reason of any other claim that I may have against said estate under said will or for any other cause whatsoever, this release *being meant for an absolute release of all my right, title and interest to the estate of John H. Lutjen, deceased.*"

The signature and seal of complainant next follows, together with a certificate of acknowledgment endorsed upon the paper in the statutory form required for recording deeds, signed by the surrogate (the officer who took it) certifying that he had first made known the contents of the release to the complainant. The release was then recorded in the surrogate's office. It is alleged in the bill of complaint that at the time of the payment to the complainant of the $5,000 named as the consideration for the release he was entitled to a much larger sum, $8,000 being stated to have been, at least, the sum then due him from the estate. The particular representations charged in the bill to have been untrue and false, upon the strength of which it is claimed the release was obtained, are that the administratrix stated to complainant, on some occasion during the summer of the year 1883—some eight years before the date of the paper—no circumstance of the occasion being given—that by reason of the birth of his half-brother and half-sister, after the making of the will, it became void, and that he (complainant) would take the same share of the estate as if his father had died intestate, she (defendant) being entitled to one-third, and the balance to be divided among the children. And that on October 21st, 1891, she stated to him that she was now ready to pay him his share of his father's estate, and that it amounted to $5,000, and directed him to go to the surrogate's office and there sign a paper, which he thereupon did. While it is, in the bill, charged that the release was obtained from him by the fraud and covin of the administratrix, it is not charged that she made those representations with intent to defraud the complainant. There is no charge in the bill that he did not fully understand the object and terms of the instru-

ment at the time he executed it, nor that there was any want of mental capacity on his part, nor that he was under any disability at any time, nor that any mistake, either mutual or unilateral, was made by the parties. No prayer is made for the rescission, reformation or the correction of the instrument so that it should express the correct consideration which the bill claims should have been inserted, and no tender or offer to restore the consideration, which the bill admits the complainant received at the giving of the release, has been made by the bill or elsewhere in the case. At the hearing there was no proof of any mental or other disability on the part of the complainant at any time, nor that he did not comprehend fully the scope and language of the release before he signed it. He was sworn at length as a witness, and testified that he read a part of the release (what part he does not say), which he says the surrogate, at his office, left with him alone in the room, to be read by him. He did not deny that he was fully apprised of its contents on the occasion of its execution by him. His testimony shows that he was twenty-three and one-half years old and upwards at this time, having been born in March, 1868; that he had been engaged, since he became sixteen years old, as a clerk in various kinds of business after his father's death in the year 1883. He went to Europe (to Germany) alone in 1883, and, on returning, went again into business, first in Jersey City and afterwards in New York City. His business abilities were such that a salary of only $2 per week, at first, increased to $12 per week in the year 1891. His answers to questions asked of him on the witness-stand, involving dates of past transactions, the various businesses in which he had been engaged, and other material events, were free from confusion or mistakes of thought, and indicate a mind of a least average intelligence. At the time of the execution of the questioned paper, no counsel or advisers had been employed by either party to it (except the surrogate, who was employed by the administratrix). It was drawn by the surrogate at the request of the administratrix, and he inserted the consideration then estimated by him to be the correct sum due complainant. The only evidence of alleged misrepresentation by the administratrix was that of the complainant, who testified as follows:

Lutjen *v.* Lutjen.

"Shortly after my father's death my stepmother told me that my father had made a will in which he had willed me $10,000, and the balance was to go to her; but that will was made before the other two children were born, and naturally that will was no good, and according to law she would be entitled to one-third, the balance to be divided among the children, and that my share would be $5,000, and that the other children would receive their share when the youngest became of age; that was the boy; that was all *they* told me about it."

The witness added that she never said anything to him afterwards about it, and that he did not believe the subject was ever brought up again until the time in 1891, when his stepmother, he said, told him "to go down to the surrogate's office and sign a paper." Upon this subject the administratrix testified that when the complainant became twenty-three years of age she went to the surrogate, and not to a lawyer, and that she wanted to settle with the complainant, and to give him what he ought to have, and the surrogate estimated how much, and "made out" the $5,000, and that she gave that sum and more to the complainant. She also stated that she went with the complainant to the surrogate's office, and that the surrogate read the paper to him, and the will was there, and he (the surrogate) said (and twice repeated it) to him: "Do you understand?" and the latter answered "Yes." The differences between the statements of the parties as to the facts surrounding the execution of the release do not seem to have been of sufficient moment to the controverted issues to have suggested to either counsel a resort to the testimony of the surrogate for other light. He was not sworn.

The proofs further show that the administratrix had been the guardian of the person and property of the complainant until he reached the age of twenty-one, and that he was boarding with her at the date of the release.

Henrietta Lutjen (one of the testator's children) on November 22d, 1900, conveyed to said Helene Lutjen, by deed of bargain and sale, dated on that day, portions of some of the lots of land and premises of which said John H. Lutjen died seized.

The decree below finds that the complainant was entitled, at the giving of the release, to a sum of about $2,000 in excess of the sum then received by him, and thereupon adjudges and decrees that the release should be made void, and that the adminis-

tratrix, upon the complainant's tendering her a release of all his right in the estate, should pay him such excess, together with interest thereon from October 21st, 1891, and costs of suit. Upon the head of fraud the decree is silent, nor does it find, expressly, nor except by implication, that there was any mistake made by the parties, or either of them, on the occasion of the delivery of the release.

*Mr. Charles L. Corbin,* for the appellant.

*Mr. Maximilian T. Rosenberg* and *Mr. Theodore Rurode,* for the respondent.

The opinion of the court was delivered by

VREDENBURGH, J. (after stating the facts as above).

The absence from the decree appealed from of any finding of the jurisdictional ground taken for invalidating the release, seems to justify a brief reference to the subject of jurisdiction. The right to an accounting in equity does not exist in favor of the complainant unless and until his deed of release is swept from his path. While that remains, his way is barred. He is, until it is displaced, effectually estopped by its clear and explicit terms from enforcing any right he might otherwise possess to a further share in the real and personal property of his testator. The share or interest which *prior* to the delivery of his lease was vested in him jointly with the defendant, became, *after* its delivery, the separate and absolute property of the defendant. If, under the evidence, there was no jurisdictional footing to set aside the release, his bill, it will be conceded, should have been dismissed. There being no mutual mistake alleged, there could have been no relief granted for the reformation of the instrument on that ground, as this court has repeatedly held—*Green* v. *Stone, 9 Dick. Ch. Rep. 387; Herron* v. *Mullen, 11 Dick. Ch. Rep. 839*—nor has the complainant placed himself, by the form of his bill, in a position to ask for a rescission on the ground of a mistake on his part. See cases, *supra.* The sole frame of the bill is that the release was obtained from the complainant

through the exercise of actual fraud by the defendant, but the decree does not so find, nor does the evidence justify such a finding. In the proofs there can be found no trace of positive or designed fraud in the entire history of the transactions between the parties. If fraud can be predicated at all, it is but constructive, and such as arises, presumptively, only from the confidential relationship of the parties. The utmost that can be said in behalf of the view that the release was procured by fraud is, it seems to me, that owing in part to the confidential and friendly relationship of the parties, in part to the absence of independent and competent legal advice, as well as owing to the inherent difficulties, both in law and fact, of the computation of the balance due him, the complainant was induced to make the settlement and execute the instrument of release for a less sum of money than was then his due. The administratrix, on her part, for like reasons, ran the equal risk of paying to the complainant more than was his due. It would be strange, indeed, if the administratrix intended to profit by a false statement made more than eight years before the complainant was expected to act upon it. She gave him, according to the complainant's own testimony, from the year 1883 until the year 1891 to think about the $5,000 and to make the calculation of the balance due him, during which time he could, of course, consult his friends or any lawyer upon the subject. He thus admits he had notice for a period of not less than eighteen years before he brought his suit and for more than twelve years after he reached his majority, and for nearly ten years since he executed his release, that the claim made then, as well as now, by those whose pecuniary interests he must have known were opposed to his own, was that $5,000 constituted the correctly calculated amount of his share. He was thus early, openly and frankly dealt with by the defendants, and put upon his own inquiry during that long period of time. His failure to investigate for himself or to make inquiry of others whose interests were not adverse to his own, and who were competent to advise him, was his own affair and his own negligence (if such, indeed, it has turned out to have been). A more deliberate opportunity to an interested party to arrive at a correct result could scarcely have been given. Even if it

be admitted that he has disclosed the whole truth as to the information he obtained, prior to the date of the release, respecting the sum of money due him, certainly it would seem that he should be held bound by his subsequent deliberate submission of the matter to the surrogate. After the surrogate's calculation and decision, when the items of the account, involving the prices of board, the periods of time and the value of services rendered (and many small items of expenditure which had occurred during the years since the father's death in 1883), and when all the facts were fresh and easily ascertainable, such decision and its acceptance by the complainant without objection should be regarded at this late day as final. The various methods of calculation of the complainant's share, as claimed by the respective parties under section 21 of our statute concerning wills, and referred to at length by the learned vice-chancellor in the opinion below, show some of the difficulties of the computation. The parties evidently adopted the estimate of the surrogate because they both undoubtedly believed it to be correct. For the accurate adjustment of all these old items the court can now have only the assistance of the fading memory of witnesses, and cannot feel satisfied of its ability to deal justly with the situation as it really existed. A finding of these facts now by this court can hardly be more than a conjecture, a condition of judicial uncertainty that cannot justify the setting aside of the formal settlement of 1891.

The conjectural character of the decree below is evident from the following terms, used in the conclusion in denying an accounting urged by the defendants, viz.: "But I think that an accounting must be refused for the simple reason that a reperusal of the evidence satisfies me that it is impracticable to take it. *There are no data in existence from which a master could arrive at any just conclusion capable of being stated in dollars and cents.* * * * *The result is necessarily founded somewhat upon conjecture.*"

But there is a further ground for the rejection of the claim of the complainant by a court of equity. His release has stood unchallenged by its author upon the records of the titles to property in the public office for the long period of nine years and

almost eight months. Lapse of time alone is deemed by the authorities to be a sufficient ground of estoppel in cases like the present, when the court cannot feel confident of its ability to ascertain the truth now as well as it could when the subject for investigation was recent and before the memories of those who had knowledge of the material facts have become faded and weakened by time. To constitute estoppel of this description it is not essential that any actual loss of testimony, through death or otherwise, or means of proof, or changed relations, to the prejudice of the other party, should have occurred. But the estoppel arises because the court cannot, after so great a lapse of time, rely upon the memory of witnesses to reproduce the details that entered into the final execution of the instrument of settlement. The case in hand is, as already noted, a striking illustration of the importance of adhering to this rule. It is held by a long line of controlling authority, both in this state and elsewhere, that suitors who seek to repudiate their deeds of release are bound to use reasonable diligence, after the delivery of the instruments of settlement, both to ascertain their rights and to enforce them in courts of equity. The old equitable maxim, *Vigilantibus non dormientibus æquilas subveiut,* is applied her. Equity requires this diligence, in analogy to the statutes of limitation at law, for the security of titles to property; to guard against the danger of the loss of evidence by the death, failure of memory or absence of witnesses and proofs, and for other important considerations. There has been no inflexible rule adopted by the courts fixing any exact period of time as a bar to relief in such cases. Necessarily each case must rest upon its differing circumstances. Under what variety of situations our courts of equity have refused relief to litigants who, being under no legal disabilities, have not used what the courts have regarded as reasonable diligence in challenging their deliberate seals to like instruments, will be seen by reference to the following cases:

In *Doughty* v. *Doughty, 3 Halst. Ch. 643,* in an opinion read by Chief-Justice Green, where the instrument of settlement, sought to be avoided for inadequacy of consideration and fraud (charges of unsoundness of mind of the complainant also being made),

was executed in July, 1833, and the bill was filed in December, 1845—a period of about twelve years—this court held that the objection of lapse of time was fatal to the relief sought, in whatever form the case might be presented.

In *Gifford's Administrator* v. *Thorn, 1 Stock. 702,* where the deed of assignment and release attacked was of a residuary estate worth a sum very largely in excess of the amount actually received and mentioned in the paper, this court held that it was not reasonable diligence for the party, "where there is no disability and no impediment to the vindication of his rights, to lie passive for twelve years and to call on a court of equity for aid, when the lapse of time and his own laches *may have* deprived his adversary of the means of defence;" and the complainant's bill was dismissed.

In *Trustees of East Newark Co.* v. *Gilbert, 1 Beas. 78,* where the bill was filed (to set aside a deed of conveyance, on the ground that it was fraudulently procured) on the 5th of October, 1857, "nearly four years after the conveyance," Chancellor Williamson held that the injunction should be dissolved, because the complainants should have filed their bill promptly.

In *Brown* v. *Mutual Benefit Life Insurance Co., 5 Stew. Eq. 809,* in affirming a decree advised by Vice-Chancellor Van Fleet denying the defendant's efforts to repudiate his deed, this court held that if a party would avoid a deed on the ground of fraud or forgery he is required to interpose the objection promptly. The effort in this case was to invalidate a power of attorney and mortgages executed about ten years prior to suit brought to question those instruments, and this court held the delay was too great.

In *Swayze* v. *Swayze's Executors, 10 Stew. Eq. 180,* it was held, in an opinion filed by Vice-Chancellor Bird, that "where matters of account were equally within the knowledge of both parties, and there was no surprise, but considerable deliberation, and complainant allowed the settlement to stand for five years unquestioned, the court will not disturb it."

In *McCartin* v. *McCartin's Administrators, 18 Stew. Eq. 273,* this court, upon the point under discussion, affirmed the decree advised by Vice-Chancellor Van Fleet dismissing the complain-

ant's bill—reported in *16 Stew. Eq. 323*. This bill was filed in July, 1886, about nine years after the sale of the mortgaged premises. The objects of the suit, over which the controversy principally arose, were to procure a settlement of the estate of deceased and a division of the testator's property among his beneficiaries. The vice-chancellor held that the persons in whose behalf the claim was made had delayed their suit too long.

In *Coles, Administrator,* v. *Vanneman, 6 Dick. Ch. Rep. 323,* on appeal from a decree advised by Vice-Chancellor Bird, dismissing complainant's bill for laches, this court affirmed the decree and held that eight years' delay—from August, 1877, to August, 1885—by parties interested, in seeking redress from a receipt in full which was endorsed upon a mortgage at the time of its surrender by the owner, resulting in its cancellation, amounted to inexcusable laches. The suit was brought by the representative of the surrenderer against the surrenderee alone, no rights of third parties having intervened. The allegations of the bill resembled those in the present case in that they charged that the mortgage, with its endorsement, was obtained from the owner by unfair means. While the court expressed doubt as to the weight of evidence upon a question of the fairness of the transaction in the procuration of the receipt in full, in view of the mental infirmities of the owner, it held that the failure of himself and his family, who knew about the transaction, to question the matter by suit for so long a period was fatal. These adjudications, it will be noted, are based chiefly upon the idea of the injury that *might* have ensued from the loss of testimony through the impairment of memory of witnesses and other causes by reason of delay, and not upon evidence of any *actual* loss of testimony or proofs.

The case of *Tynan* v. *Warren, 8 Dick. Ch. Rep. 313,* remains to be considered. Vice-Chancellor Green there held that "the rule that laches in bringing suit will deprive one of his remedy, is not applied unless such neglect has so prejudiced the other party, by loss of testimony, or means of proof, or changed relations, that it would be unjust now to permit him to enforce his rights." While the decree in this case was reversed, upon appeal, by this court (see *9 Dick. Ch. Rep. 402*) upon other grounds,

the point of laches was not considered nor decided by this court. But there will be found no conflict of decision between that case and the present. By reference to the questions presented for decision, it will appear that Vice-Chancellor Green regarded the complainant there as entitled to enforce an express trust (although this court afterwards held that it was a resulting trust), and he rejected the defence of lapse of time, citing with approval the expression of Mr. Justice Story in *Oliver* v. *Piatt, 3 How. 333,* that "the mere lapse of time constitutes of itself no bar to the enforcement of a subsisting trust." He viewed the case he was deciding as involving, he said, "an active, *subsisting trust,*" and consequently, as controlled by his citation just quoted, that mere lapse of time constituted no bar to its enforcement; and this court, upon appeal, in the opinion read by Mr. Justice Dixon, considered the case as controlled by the character of the trust shown, expressly stating in his opinion that he had not adverted to the question of laches in the determination of the issues of that controversy. No feature of a subsisting or other trust applies to the case at bar. But it is not intended by what has been here written to construe the expression in the third head-note of "loss of testimony" as referring necessarily to proof of actual loss, as distinguished from inferential loss. Regarding such expression as meaning *any* loss of testimony, whether actual or inferential, the rule declared in that case is not opposed to the present holding.

For the reasons stated, I think the decree below should be reversed and the bill dismissed.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, VREDENBURGH, VOORHEES, VROOM—11.

*For affirmance*—None.