The quality of omniscience could be exceedingly serviceable to judges who so often labor in quest of the obscure truth. Did the complainant, Harry H. Lang, and one Percy K. *Page 101 
Hexter, now deceased, agree jointly to embark upon the business enterprises as here alleged? The voice of Mr. Hexter has been extinguished by death. The complainant is reduced to silence by our statute. R.S. 2:97-2; N.J.S.A. 2:97-2. Here, also, the quandary increases in perplexity because there is little oral testimony upon which some shadow of self-interest or improbability has not fallen.
The inquiry is rendered necessary by the bill of complaint, in which the complainant proposes two causes of action. The first asserts the former existence of a partnership orally originated by the complainant and the decedent in August, 1932, whereby they were to conduct and share equally in the profits of an exclusive sales agency of the products of Bay Ridge Specialty Company of Trenton, New Jersey. Discovery and an accounting are the remedies sought. The second cause declares that in December, 1932, the complainant and the decedent united, likewise orally, in a joint adventure to acquire and equally divide between them outstanding stock of the Specialty Company, and that in further consideration of the mutual undertaking the stock of the company previously acquired by Hexter would be equally divided. Similarly, discovery and an accounting are requested.
The truth would probably live more openly if people would only let it. If this complainant was in fact a partner, verily he was a secret and silent one. The evidence does not disclose a single memorandum, a piece of stationery, book entry, bank account, sale or title to property, record of a distribution of earnings or of a contribution by the complainant to capital, loss or expense, or any contract with the manufacturer of the products or with the customers of the sales agency, or the commission of any act by the complainant in the exercise of mutual authority, from which a reliable inference of the alleged partnership between the complainant and the decedent can be confidently inferred. Obviously, the complainant is endeavoring to weave his case solely out of the inter vivos quasi admissions of the decedent as they may now be tardily revived by the casual memories of friendly witnesses.
Public policy directs that such testimony must be sifted with extraordinary vigilance and circumspection. Indeed, it *Page 102 
has been stated by influential authorities that obvious weaknesses and possibilities of error inhere in the so-called recollection testimony of oral utterances. It has been characterized as "dangerous" and as the "most unreliable of all evidence." Bankers Trust Co. v. Bank of Rockville, c.,114 N.J. Eq. 391, 400; 168 Atl. Rep. 733; 4 Wigm. Ev. (2d ed.)463, 465; Greenl. Evid. (12th ed.) § 200.
One may be associated with another in a commercial undertaking and notoriously participate in the operations of the business, and yet the alliance may not possess the fiduciary elements and essentials of a partnership in the legal sense. In law we regard the word "partnership" in its technical signification as expressive of a relationship arising from the contractual existence of certain factual conditions and circumstances. Thus the word "partner" or "partnership" assumes to us the form of a deduction or conclusion and to legally test and verify the propriety of that conclusion, we must have information concerning the factual premises upon which it depends.
In the absence of documentary or other more direct and positive evidence, knowledge of the acts and conduct of the parties throughout the period during which the alleged partnership is supposed to have existed is certainly more trustworthy than the conversational remarks of the alleged partner recalled and warmed over after his death and after a controversy has engendered some interest, bias, and partiality. Pappas v. Venetsanos
(Del.), 167 Atl. Rep. 842, 844.
The insistence that the testimony introduced on behalf of the complainant encountered no resistance at the final hearing is fallacious. The inference from some of the evidence is inescapable that the decedent, Hexter, functioned as the sole proprietor of the business. He and he alone was the designated sales agent of the Bay Ridge Specialty Company. He controlled all of the receipts and disbursements of the sales agency, hired and discharged all of its employees, including the complainant, and apparently managed the business on his own responsibility and in accordance with his own judgment, whereas the services regularly performed by the complainant were in scope and nature those customarily *Page 103 
rendered by a traveling salesman, and for which the complainant received $7,250. Hence, the circumstantial evidence tends to promote the implication that they were not partners in the business of the sales agency.
The alleged causes of action of the complainant are sought to be sustained by an imposing amount of testimony of witnesses who, although not then personally concerned, now vividly recall in astonishing detail the statements said to have been made by Mr. Hexter many years ago. On such unusual occasions and in circumstances most extraordinary, Hexter is said to have acknowledged the existence of the partnership and voluntarily divulged the terms of the relationship in the business of the sales agency and of the alleged compact to acquire the stock of the Specialty Company. As the "trier of the facts," I have devoted very thoughtful and deliberate consideration to all of that testimony, and with some reluctance I am constrained to announce that I regard most of it as incredible. To expose its noticeable improbabilities, weaknesses, and inconsistencies, and the tone with which it was delivered, would cause this mere memorandum of my conclusions to abound in verbosity. I have applied to such testimony the recognized tests, and I conclude that most of it is unimpressive and too much of it is "inconsistent with the common principles by which the conduct of mankind is naturally governed." Riehl v. Riehl, 101 N.J. Eq. 15,22; 137 Atl. Rep. 787. That which is not rejected as incredible, should for obvious reasons be measured and appraised very moderately.
To counterpoise the testimony offered by the complainant, it was not contrary to expectation that the defendant supplied the evidence of witnesses formerly employed at the agency who testified that they never heard Mr. Hexter refer to the complainant as his partner. The notion that for $600 the complainant was to receive not only one-half of all the capital stock of the Specialty Company then owned by Hexter, but also a like division of all such stock thereafter acquired by him seems to overstep reasonable probability. The occurrence has all the features of a loan. The truth remains in ambush. *Page 104 
An assumption that I am obliged to root the actual truth out of the evidence adduced regardless of its stinted amplitude and fallible quality is likewise inexact. The burden falls upon the complainant to persuade me by adequate credible proof that the basic factual elements of his causes of action exist. To doubt the complainant's right is to deny him the relief.
There is another aspect of the complainant's cause that seizes my attention. The complainant alleges that the agreements were made in 1932. He discontinued active business association with Mr. Hexter in 1937 without having obtained an accounting or any division of the stock during that period of five years. Mr. Hexter died on March 5th, 1939. His will was probated on January 8th, 1940, on which date an order inviting creditors to present claims against his estate was made. The complainant failed to submit a claim, and a decree barring creditors was entered on July 9th, 1940. Six months later the complainant sought to have the decree opened to admit his alleged claim. The application was denied, and the bill in the present cause was filed on February 8th, 1944, and the final hearing was not requested until June, 1945.
Despite the proposed exonerative explanations of the delay, the claims of the complainant are in reality stale. Mere lapse of time does not of itself constitute laches. There is, however, a principle in Chancery expressed by the maxim that "Equity aids the vigilant, not those who slumber upon their rights."Vigilantibus, non dormientibus, jura subveniunt. The delay in the assertion and attempted enforcement of rights may from whatever cause be protracted for such a span of time that the proofs respecting the transactions out of which the rights are said to arise become by reason of the loss of informative testimony so indeterminate and obscure that it is impossible for the court to conscientiously resolve whether what is asserted to be justice to the complainant is not injustice to the defendant.Lutjen v. Lutjen, 64 N.J. Eq. 773, 781; 53 Atl. Rep. 625;Soper v. Cisco, 85 N.J. Eq. 165, 174; 95 Atl. Rep. 1016; Pine
v. Gardner, 103 N.J. Eq. 69; 142 Atl. Rep. 50; Cocheu v. NewJersey General Security Co., 128 N.J. Eq. 64; 15 Atl. Rep.
2d 124; *Page 105 Burke v. Gunther, 128 N.J. Eq. 565, 574; 17 Atl. Rep. 2d481.
Moreover, in a court broadly privileged and empowered to do equity, the unnecessary staleness of a claim naturally spins a web of suspicion and doubt about it and thus further degrades the value of parol evidence of the variety here introduced. TenBroeck v. Jackson, 71 N.J. Eq. 582, 586; 69 Atl. Rep. 488;affirmed, 73 N.J. Eq. 734; 69 Atl. Rep. 490; Frank v. Frank,93 N.J. Eq. 491; 116 Atl. Rep. 924.
Without imputing to the complainant all of the responsibility for the conspicuous lack of reasonable diligence (his present counsel are not implicated), the consequence is that his claims have been so belatedly submitted for judicial determination that the court is now deprived of the testimony of both parties to the alleged transactions, leaving only a fringe of precarious and indecisive evidence. To decide this cause in favor of the complainant would be a conjectural answer and not a justifiable solution of the factual issues. And so, I repeat. To doubt the complainant's right to the remedies he seeks necessitates a dismissal of his bill. Such a decree will be advised. *Page 106