8 N.J. Super. 490 (1950)
73 A.2d 278
FRANK FOWLER, PLAINTIFF,
v.
AGNES SCOTT AND JOHN NICKERSON, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 16, 1950.
*491 Mr. Stanley S. Dickerson, for the plaintiff.
Mr. John E. Mullane, for the defendants.
JAYNE, J.S.C.
During the fifteenth and sixteenth centuries the custom became prevalent for landowners in England to have the legal title held by others for their use. That practice generated the implication that when a person purchased land and accepted title in the name of another, the latter was expected to hold to the use of the former. The use which thus arose from the presumed intention of the transferor or purchaser was denominated a resulting trust. The presumption was not annihilated either by the enactment of the statute of uses or the statute of frauds. A resulting trust need not be evidenced by a written memorandum. Baldwin v. Campfield, 8 N.J. Eq. 891, 903 (E. & A. 1853).
Professor Ames criticised the existence of the presumption. Ames, Lectures on Legal History (1913), 431 et seq. Many states, notably Kentucky, Michigan, Minnesota, Wisconsin, and New York, abolished legislatively the so-called purchase-money resulting trusts. It was as early as 1830 that the Real Property Commissioners in New York condemned trusts of that nature. In some other states, the common-law resulting trust is sustained by statute. Except, however, in those jurisdictions where the rule has been overthrown by statute, the rebuttable implication of a resulting trust still survives.
*492 The number of reported cases relating to resulting trusts is enormous. The wisdom of recognizing such a class of trusts has been the subject of a conspicuous diversity of opinion. It has been vehemently declared that of all equitable estates, none is "better calculated to promote litigation and perjury." Perhaps in a modified sense, there is some measure of truth in that characterization. Nevertheless the abolishment of such a type of equitable relief might well introduce even greater evils and appalling consequences.
The oppugnancy of views seems to be attributable to the alleged slipperiness of parol evidence often admissible in such cases and to the arbitrary limitations and subtle distinctions employed by some courts in the application of the equitable doctrine.
It is the firmly established law in this State that where, upon the purchase of property, a conveyance of the legal estate is taken in the name of one person and the consideration of the purchase is paid by another  the parties being strangers to each other  a presumptive or resulting trust immediately arises in virtue of those circumstances of the transaction, and the legal estate is considered to be held in trust for the person by whom the purchase money was paid, unless the presumption of such a trust be overcome by proof that it was the intention of the party from whom the consideration proceeded that the named grantee should take beneficially. Depeyster v. Gould, 3 N.J. Eq. 474 (Ch. 1836); Johnson v. Dougherty, 18 N.J. Eq. 406 (Ch. 1867); Cutler v. Tuttle, 19 N.J. Eq. 549 (E. & A. 1868); Read v. Huff, 40 N.J. Eq. 229 (E. & A. 1885); Down v. Down, 80 N.J. Eq. 68 (Ch. 1912); Pope v. Bain, 5 N.J. Super. 541 (Ch. 1949).
The presumption, however, does not command conclusive effectiveness. In all species of resulting trusts, intention is the superior element of consideration. Gordon v. Griffith, 113 N.J. Eq. 554 (Ch. 1933).
Where the parties are attached by the relationship of husband and wife and the husband pays the consideration of the purchase of lands and has the conveyance made to his wife, *493 there is the initial presumption that a gift or settlement was intended. Strong v. Strong, 134 N.J. Eq. 513 (Ch. 1944); 136 N.J. Eq. 361 (Ch. 1945); affirmed, 137 N.J. Eq. 537 (E. & A. 1946).
Where a wife advances money to her husband from her separate estate, the presumption is that the advancement is a loan or a deposit for safe keeping and the burden falls upon the husband to prove it to be a gift. Cole v. Lee, 45 N.J. Eq. 779 (E. & A. 1889); Adoue v. Spencer, 62 N.J. Eq. 782 (E. & A. 1901); Elmer v. Trenton Trust & Safe Deposit Co., 76 N.J. Eq. 452 (Ch. 1909); Yorn v. Yorn, 139 N.J. Eq. 300 (E. & A. 1947); Van Inwegen v. Van Inwegen, 4 N.J. 46 (Sup. Ct. 1950).
In some jurisdictions it is presumed in the absence of proof of a legal consideration that a transfer made by a man to a mistress with whom he is cohabiting illicitly is the result of undue influence. Vide, Platt v. Elias, 186 N.Y. 374, 79 N.E. 1 (Ct. of A. 1906).
In Bower v. Bower, 78 N.J.L. 387, 393 (E. & A. 1909), it is stated that the fundamental distinction between a presumption and an inference does not arise from any consideration of the greater persuasive quality of the former, but solely from a rule by force of which in the case of a presumption a given state of circumstances is invested with certain consequences touching the further production of proof.
Justices Parker and Perskie in the former Supreme Court expressed their approval of the view of the Rhode Island courts that presumptions of the nature to which I have alluded are not evidence and have no such weight and that such a presumption, where applicable, merely serves to erect a prima facie case for the party in whose favor it exists and to point out the party who has the duty of going forward with proof. Dunn v. Goldman, 111 N.J.L. 249 (Sup. Ct. 1933).
Thus, such presumptions are beacons designed to regulate the course of the inquiry in quest of the real intention of the party. They do not prevent the court from discovering the real intention of the party outside the channel.
*494 It is the destructibility of such presumptions when in rivalry with antagonistic evidence that frequently renders difficult the satisfactory determination of cases of this class.
The evidence in the present case discloses that in the year 1921 or 1922 one Frank Fowler, a widower with infant children, invited into his home as housekeeper one Helen Nickerson, whose husband was then and is now confined in an institution for the care of the mentally incompetent. Mrs. Nickerson was accompanied by her infant daughter, the defendant Agnes Scott.
Mrs. Nickerson reared his children and her own in a motherly manner and remained a member of his household until her death on December 11, 1945. Fowler died on August 25, 1949.
It is unanimously conceded that the associations between Fowler and Mrs. Nickerson were exceedingly affectionate throughout the period of more than twenty years until her death terminated their happy relationship. There is ground for the belief that at some early date in their companionship they began and thereafter continued to cohabit as man and wife. Her marital situation probably prevented their marriage.
There was an occurrence in the initial years of their associations to which I ascribe some significance. Fowler in the careless manipulation of a shot gun accidentally wounded the foot of Mrs. Nickerson, which injury by reason of infection required the amputation of her lower limb. It is said that the serious consequences of this unforgettable mishap conspicuously enhanced Fowler's regard for the welfare of Mrs. Nickerson.
It is also evident that during the period of their affinity each maintained a separate bank account. On December 21, 1935, Fowler loaned $3,200 on the security of a real estate mortgage. On June 30, 1936, he assigned the bond and mortgage to Mrs. Nickerson and to his daughter, Josephine Fowler. On June 3, 1943, he received from his daughter Josephine a general power of attorney. The mortgaged premises were *495 damaged by fire and under date of June 2, 1943, a draft was issued by the Reliance Insurance Company of Philadelphia payable to the mortgagors and to Helen Nickerson and Josephine Fowler as mortgagees. This draft was endorsed on behalf of Josephine by her father pursuant to the power of attorney. The proceeds were deposited on June 11, 1943, in a bank account of Mrs. Helen Nickerson. The previous balance in the account was $1,629.94.
On December 4, 1943, Fowler negotiated the acquisition of the residential property implicated in this action. The grantor, Ira W. Safran, a real estate broker, prepared the deed conveying the title to "Helen Nickerson, widow." Mr. Safran declares that Fowler instructed him to have the conveyance made to Mrs. Nickerson.
It seems apparent that the purchase price of $2,450 was withdrawn from Mrs. Nickerson's bank account. It is also manifest that the funds were initially derived from the earnings of Fowler. Were the moneys utilized for the payment of the purchase price in law and fact those of Fowler or of Mrs. Nickerson? Did the fund come to Mrs. Nickerson by gift or in trust?
There is no suggestion of fraud or mistake in the transaction. There is testimony that Fowler voluntarily directed that the deed of conveyance be made to Mrs. Nickerson as the grantee. Cf. Sayre v. Lemberger, 92 N.J. Eq. 656 (E. & A. 1921).
Assuredly the burden of establishing a resulting trust is on the party asserting it. Phillips v. Phillips, 81 N.J. Eq. 459 (Ch. 1913); affirmed, 83 N.J. Eq. 345 (E. & A. 1914).
I think that in the circumstances of this case a resulting trust cannot justifiably be inferred from the acts of the parties, and any presumption in favor of the plaintiff's cause of action is at least neutralized by the circumstantial realities.
Mrs. Nickerson had throughout a score of years maintained the household, reared Fowler's children, and merited his affectionate and sympathetic regard. Although not the natural *496 one, she may well have been the real object of his bounty. Any notion that his earnings were deposited in her account for considerations of convenience is dispelled by the fact that he was active and she was physically retarded. Moreover, Mrs. Nickerson was illiterate and, in fact, unable to sign her name.
This action is now prosecuted by the executrix of Frank Fowler to transform into a trust an apparent absolute conveyance made in 1943. It is appropriate to repeat here my remarks in Lang v. Hexter, 137 N.J. Eq. 100, 104 (Ch. 1945); affirmed, 138 N.J. Eq. 478 (E. & A. 1946): "The delay in the assertion and attempted enforcement of rights may from whatever cause be protracted for such a span of time that the proofs respecting the transactions out of which the rights are said to arise become by reason of the loss of informative testimony so indeterminate and obscure that it is impossible for the court to conscientiously resolve whether what is asserted to be justice to the complainant is not injustice to the defendant. Lutjen v. Lutjen, 64 N.J. Eq. 773, 781, 53 A. 625; Soper v. Cisco, 85 N.J. Eq. 165, 174, 95 A. 1016; Pine v. Gardner, 103 N.J. Eq. 69, 142 A. 50; Cocheu v. New Jersey General Security Co., 128 N.J. Eq. 64, 15 A.2d 124; Burke v. Gunther, 128 N.J. Eq. 565, 574, 17 A.2d 481."
To doubt the plaintiff's right to the remedy she seeks necessitates a dismissal of the complaint. The counterclaim of the defendant was abandoned.
Judgment accordingly.