Tresch v. Wirtz.

## JOHN TRESCH

### v.

## JOHN M. WIRTZ and MINNIE WIRTZ.

1. By the common law, a husband had an absolute right to all moneys earned by his wife; but this rule has been abrogated in this state. *Rev. 637 § 4.*

2. Prior to this statute, a husband could make a valid gift or relinquishment to his wife of her earnings, even against creditors whose debts had already been contracted.

3. If a wife places money in her husband's hands, to be invested for her, and he accepts it with that understanding, he becomes her trustee, and is bound to execute his trust faithfully.

4. The marital relation does not disqualify a husband from becoming the agent of his wife.

*Mr. E. D. Deacon,* for complainant.

*Mr. M. T. Newbold,* for defendants.

VAN FLEET, V. C.

This is a creditor's suit. The defendants are husband and

wife. The complainant having recovered a judgment against the husband, and being unable to find any property out of which he can make his debt, seeks by this suit to reach certain property standing in the name of his wife, which he says is, in law, the property of the husband, and should, therefore, be applied to the payment of his debts.

The facts are almost entirely free from dispute. They come mainly from the mouths of the defendants, and may be stated as follows : The wife, in the spring of 1868, commenced the business of hair-dressing and the manufacture of human hair, in Jersey City. She started with a capital of $250. Part of this she borrowed, and the balance she had earned with her needle. Her husband at this time was engaged in the manufacture of hair jewelry, in the city of New York. He had no interest in his wife's business ; he furnished none of her capital, and exercised no control over her in its prosecution, but allowed her to conduct herself in its prosecution as though she were a *feme sole.* She succeeded, and made money. In July, 1871, she gave her husband $1,000 to loan for her on bond and mortgage. He made the loan, but allowed the papers to be made payable to himself. He now, however, says that the money belonged to his wife, and that the bond and mortgage were made payable to him through mistake. In January, 1874, $500 of the principal of this mortgage was paid to the wife, and a new mortgage executed to her for the balance, and the old one canceled. Part, at least, of the complainant's debt had been incurred by the husband prior to this last date. The husband gave up his business in 1871, and after that, up to July 1873, assisted his wife more or less in her business. He was, however, a mere worker ; the wife continued to control the business, and he merely gave her such labor as she required. She paid him no wages, but supported him, and gave him money as she thought he needed it. In July or August, 1873, he formed a copartnership with a man named Beltz, to carry on the business of florists. Beltz furnished no capital. Mrs. Wirtz really furnished the whole, by loans to her husband. The evidence renders it very clear that she advanced, by way of loan, between

July, 1873, and January, 1874, over $2,000. Both husband and wife swear that these loans were made upon a distinct understanding that they were to be repaid by a conveyance of the house and lot which the complainant now seeks to have declared the property of the husband. During the winter of 1873–74 the husband became satisfied that his copartner was defrauding him, and on the 16th of January, 1874, he sold his interest in the floral business for $1,000, and a stipulation or promise by his purchaser that he would pay the husband's share of the copartnership debts. His purchaser paid neither the purchase-money nor any part of the debts of the copartnership. On the 7th of January, 1874, the husband conveyed the house and lot in dispute to a third person, and that person, on the 2d of February, 1874, conveyed them to the wife. Upon these facts the complainant asks a decree declaring that the mortgage and house and lot are held by the wife in trust for her husband's creditors, and adjudging that they shall be applied to the payment of his debts.

The evidence shows very clearly that the money loaned on the mortgage, as well as that invested by the husband in the floral business, was made by the wife. She acquired it chiefly by her labor and skill as a hair-dresser—her other gains being quite small—so that the money used for both purposes was her earnings, the product of her labor. The evidence, I think, makes it equally clear that she carried on business for her own benefit and advantage, with her husband's full consent, and that when she passed over the money to him, represented by the property in dispute, she had no intention to give it to him, nor to abandon it, nor he any purpose to obtain it, or to reduce it to possession in virtue of his marital rights.

Taking these to be the facts, the question presented by the case is one of law. The complainant contends that a wife's earnings belong to her husband, and that he cannot, as against his creditors, give them to her. There can be no doubt that, by the common law, a husband had an absolute right to all moneys earned by his wife; if he died without having recovered them, they did not survive to her, but went to his representatives. If

it became necessary to sue for them during coverture, the husband had to sue alone, unless he could show a special promise to the wife, and then he might sue either in his own name, or in the names of both, as he chose. *Clancy on Husb. and Wife 3, 5.* But this rule of the common law has been abrogated in this state. By a recent statute, the wages and earnings of a married woman, acquired or gained by her in any employment, occupation or trade, carried on separately from her husband, are made her separate property, as though she were a single woman. *Rev. 637 § 4.* This statute does not, however, prescribe the rule by which the rights of the parties to this suit must be determined. It did not take effect until after the moneys in controversy had been earned, received and invested.

The question is, could a husband, prior to this statute, relinquish his common law right to the earnings of his wife so as to give her a valid title to them against his creditors? The complainant contends that he could not, and this contention is fully supported by a proposition affirmed as law in *Cramer v. Reford, 2 C. E. Gr. 380.* It is there said :

" A wife's earnings, and the avails of her labor, during coverture, belong to her husband, and he cannot, as against his creditors, give or agree to give them to her ; nor can she justly claim that property purchased with them, in her name, is hers, and not subject to be taken for his debts."

Two cases are cited in support of this proposition, namely, *Skillman v. Skillman, 2 Beas. 403,* and *Belford v. Crane, 1 C. E. Gr. 265;* but these cases, as I understand them, do not go quite to the length of declaring that a husband can, under no condition of facts, make a valid relinquishment of his right to his wife's earnings as against his creditors, but they do go to this extent—they hold that while a wife may acquire, by gift from her husband, a separate property, in equity, in her earnings, as against him, such gift will not be valid as against his creditors, unless made pursuant to an ante-nuptial contract. The creditors here meant are, obviously, those only whose debts were contracted prior to the gift or relinquishment. When free from debt, a husband may lawfully surrender his right to his

· wife's earnings, or make a valid gift to her of anything that is susceptible of ownership. The wife, in this case, had been carrying on business as a *feme sole*, with her husband's. consent, for more than five years before the complainant's debt was incurred. The property the complainant is seeking to reach had been surrendered by his debtor long before the relation of creditor and debtor existed between them. The complainant did not trust the wife, nor look to her ability to earn money for the payment of his debt.. If, at the time his debt was contracted, he knew his debtor had a wife, and made any inquiry respecting her, he undoubtedly was informed that she was carrying on
· business separately from her husband, and had loaned him the money with which he had started business. The gift in this case long ante-dated the complainant's claim, and was made when, so far as appears, the husband had no creditors, and did not expect to incur debts, and must, therefore, be held valid against the complainant.

But at the time the complainant's debt was contracted, a husband might make a valid gift or relinquishment to his wife of her earnings, even against creditors whose debts had already been contracted, though no ante-nuptial arrangement existed between them. In *Peterson* v. *Mulford, 7 Vr. 489,* decided by the court of errors and appeals at its March Term, 1873, that court declared it to be the settled law of this state, that a husband may permit his wife to labor for herself and appropriate to her own use the avails of her labor, and may give to her, or allow her to appropriate to her own use, the proceeds of her own labor when received by her, and that such permission or gift is good and valid as against his creditors, if such proceeds have not actually been reduced into his possession.

No part of the earnings represented by the property in controversy was ever reduced to possession by the husband. The
· fact that he invested $1,000 of them, on a mortgage payable to himself, did not, under the circumstances stated, constitute a reduction to possession so as to make the security his and deprive the wife of it. By allowing her to establish a business
· and to manage and control it as her own separate affair, and to·

take and appropriate its proceeds as her separate property, he told her, in the most unmistakable manner, that he abandoned all right to her earnings and the proceeds of her business. While they remained in her possession they were hers absolutely, and he was powerless to get them from her. When she had accumulated sufficient to warrant her in making an investment, it was both natural and proper for her to go to him and ask him to do it for her. If she placed the money in his hands to be invested for her, and he accepted it with that understanding, he became her trustee, and was bound to execute his trust faithfully. If, after getting the money into his possession to invest for her, he should have attempted to deprive her of it by the exercise of his marital rights, his attempt would have been a fraud of the most offensive kind. Neither he, nor those who must trace their title through him, can found a right on a wrong of that character. But the husband did not invest the money in his own name for the purpose of asserting a claim to it, nor for the purpose of making the security his own. The investment in his name was a mistake, which, in equity, took nothing from the wife, and gave nothing to the husband. In what the husband did there was no intent to appropriate the money to himself, in virtue of his marital right, and without such intent there can be no reduction into possession so as to deprive the wife of her right. *1 Bish. on Mar. Wom.* § *119.*

Nor does the fact that a husband assists his wife, by working for her, or managing her business, make her property liable for his debts. A married woman may allow her husband to manage her separate estate, without necessarily subjecting it, or the profits arising from his management, to the claims of his creditors. *Aldridge* v. *Muirhead, 11 Otto 399.* A man's creditors cannot compel him to work for them. A debtor is not the slave of his creditors. The marital relation does not disqualify a husband from becoming the agent of his wife. All the property of a married woman is now her separate estate; she holds it as a *feme sole,* and has a right to embark it in business. She may lawfully engage in any kind of trade or barter. If she engages in business, and actually furnishes the capital, so that the busi-

ness is in fact and truth hers, she has a right to ask the aid of her husband, and he may give her his labor and skill without rendering her property liable to seizure for his debts. *Voorhees* v. *Bonesteel, 16 Wall. 31.*

The property the complainant seeks to reach is not the property of his debtor, and his bill must therefore be dismissed, with costs.