Cole v. Lee.

Mulford Cole et al., appellants,

v.

Daniel H. Lee's Executors, respondents.

A creditor, by his bill, attacked as fraudulent certain conveyances from the debtor to his sons; upon the proofs the conveyances were shown to have been free from fraud but made as security.—*Held*, (1) that the debtor and those claiming in his right occupied the position of mortgagor and were only entitled to redeem, and that a decree on the prayer of a creditor for the sale of lands thus pledged and for an account, when no redemption was sought and no payment of the debt secured was offered, could not be sustained; (2) when lands thus conveyed as security had been sold and the proceeds of sale had been applied to the discharge of the pledge by the concurrence of both grantor and grantee, and there was nothing to indicate fraud or mistake in the transaction, a decree in favor of creditors or an assignee, requiring the transactions to be opened and the grantees to account, could not be sustained. The bill assailed a mortgage made by the debtor to his son as wanting in consideration; the proofs showed that it was made to be transferred, and was transferred, to the debtor's wife, to secure her for $3,000 of her money which her husband had obtained of her.—*Held*, (3) that when the fact that the husband received his wife's money was established by proof, there was established a liability on his part to account in equity to her for at least the principal sum received, which liability would afford a consideration sufficient to support such a mortgage; (4) that, while the husband and those who stand in his right might have contested the wife's claim, by proof that she had given the money and transferred her property in it to her husband so that no liability to account for the same arose, or by proof that the husband's liability had been previously discharged by his having appropriated the money in accordance with the wife's directions, in the absence of such proof the wife was not required to show that the transaction was not a gift, or to establish the continuance of her husband's equitable liability to her.

Appeal from a decree of the court of chancery founded on the opinion reported in *Lee* v. *Cole, 17 Stew. Eq. 318.*

*Mr. R. V. Lindabury*, for the appellants.

*Mr. J. H. Jackson*, for the respondents.

---

Cole *v.* Lee.

---

The opinion of the court was delivered by

MAGIE, J.

The bill in this cause was filed by Daniel H. Lee, a judgment creditor, the execution on whose judgment had been returned unsatisfied, against Mulford Cole, the judgment debtor, and various grantees and assignees of his property. It charged that Cole's conveyances to them had been made and accepted with intent to defraud his creditors.

The defendants charged with fraud answered the bill and denied the charge.

Upon the proofs taken, the court below held that some of the transactions impugned were tainted with the fraud charged, and decreed relief thereupon in favor, not of the complainant below, but of a defendant to whom Cole had assigned his property for the benefit of his creditors.

The appeal attacks the decree on two grounds, and it is insisted (1) that the proofs did not justify the conclusion that any of the transactions in question were fraudulent, and (2) that the frame of the bill did not warrant the relief granted.

The bill assailed a large number of transactions between Mulford Cole and his sons. Those which were adjudged to be fraudulent may be grouped, for convenience in considering the proofs, into three classes.

In the first class I put four conveyances from the sheriffs of Somerset and other counties to Elias Cole, one of said sons, on sales of land under decrees of foreclosure in favor of Mulford Cole as mortgagee, which conveyances were set aside by the decree.

In the second class I include conveyances of land made by Mulford Cole to his sons, which were variously dealt with by the decree.

The remaining transaction was a mortgage made by Mulford to Elias Cole to secure $3,000, which the decree set aside.

Before examining the proofs, one observation should be made. The complainant below (who has died during the progress of the cause, and is now represented by respondents, his executors) so

framed his bill as to prevent the defendants named therein from giving to their answer any evidential force, for he required them to answer without oath. Yet, when he produced witnesses to make out his case, he called every defendant charged with fraud and examined them, not on collateral or indifferent matters, but on the very transactions he assailed. Their evidence, thus elicited, comes accredited by their adversary, and, unless discredited by the other evidence, must be taken into consideration and weighed therewith.

The fraud, for which the sheriffs' deeds were decreed to be invalid, was inferred by the court below from various circumstances assumed to have been established by proof.

The circumstances relied on, which are of the greatest importance, and without which the other circumstances are entirely devoid of significance, are these, viz.: that Elias Cole bought at the sheriffs' sales for prices not only below the amount of the several decrees, but less than the lands sold were then really worth, and that he then knew the mortgagee, his father, to be insolvent.

There is no ground in the evidence for suspecting contrivance to keep the sales secret or to deter bidders. In the absence of evidence the official sales must be presumed to have been open and fair.

The prices paid by Elias were in fact less than the amount of the respective decrees. The proofs, however, clearly show that the mortgages came into existence at a time of speculative and inflated values, and the sales took place at a time when values had largely depreciated. That circumstance, therefore, cannot justify even a suspicion of fraud.

There is evidence that in each case the land bought by Elias was worth more than the price he paid. It comes from witnesses who express opinions of the value of these lands, based upon their knowledge of the values of other lands in the neighborhood, at the time of the sales, which were made seven years and more before these witnesses testified. If uncontradicted, such evidence ought not to go far in establishing fraud in an official sale

to the highest bidder. The experience of inflated estimates of value collapsing under the test of such sales has been too recent and too general to justify courts in attributing much weight to such opinions. But, in this case, this evidence is opposed by other evidence, coming from witnesses equally competent to judge, and possessing at least as much weight, which must have escaped attention below. It tends to show values so nearly equal to the prices paid that the difference is quite immaterial. In this opposition of opinion it is unwarranted to assume that it was proved that the purchases were made below the true values and thereon to infer fraud.

Nor have I been able to find in the proofs, sufficient to justify the statement that Elias Cole, at the time of the sales, knew his father was insolvent. That Mulford Cole was then largely indebted clearly appears. But it does not appear that he was pressed by his creditors, or that he believed that his property was insufficient to pay his debts. The son denies knowledge of his father's insolvency at that time.

Another circumstance appears which was not adverted to below, but which cannot be left out of account in determining the intent which characterized these transactions. Elias Cole was then an unsecured endorser on his father's paper to a considerable amount. If the purchases at the sheriffs' sales were made in pursuance of a preconceived plan to protect Mulford Cole in his insolvency against his creditors, the parties would naturally have resorted to Elias's contingent liability to discharge the foreclosure decrees. Yet, the uncontradicted evidence is, that he paid the purchase price on each sale out of his own money, and continued liable on his endorsements without security. Such a course is so highly improbable and inconsistent with a fraudulent intent that the fact it was adopted aids materially the conclusion that no such intent existed.

Taking all the evidence together, I am compelled to conclude that any inference that these purchases were made with intent to hinder, delay or defraud creditors finds no support therein sufficient to justify judicial condemnation of the transactions.

The decree, so far as it set aside the sheriffs' deeds and ordered an accounting for moneys borrowed by mortgages thereon, cannot be sustained.

Passing to the next group of the transactions dealt with by the decree, we find that a conveyance of two undivided third parts, of about eleven acres of mountain land, made in 1880 by Mulford to Elias Cole, was set aside as made with intent to defraud creditors.

But this conclusion can only be reached by ignoring the uncontradicted testimony of the parties to the deed, who are the only witnesses speaking on this subject. Both declare that the shares in question were bought from the owners, and paid for by Elias, in 1867. Why the deed then executed was made to Mulford does not appear, but the case shows that Elias did not become of age until June of that year. The title then acquired was defective, as to one share, because the owner was a minor. His deed was not procured until 1880, and thereupon Mulford conveyed to Elias, who, in equity, was the owner of both shares. Unless this evidence can be rejected, for which I can find no reason, there was no ground to declare this conveyance fraudulent as to creditors.

Another conveyance from Mulford to Elias Cole, dated June 16th, 1882, is declared by the decree to be a mere security for loans, and an account is directed to be taken of the rents and of the proceeds of a sale of the lands conveyed thereby.

All the evidence respecting this conveyance comes from the parties thereto. It furnishes no ground for a charge of fraud in the transaction. The claim of the bill in respect to it is not proved, and the relief thereby asked could not be granted. But the relief granted cannot be justified, if the bill had been framed with a view to such relief. In the absence of fraud the parties occupied the position of mortgagor and mortgagee. Mulford Cole might have tendered the amount secured and demanded a reconveyance or discharge. If refused, he might have filed a bill to redeem, which would have involved an accounting. But he could not have invoked a judicial decree for the sale of his pledge, nor demanded an accounting, except in connection with a

proposed redemption. His creditors and his assignee have no greater rights.

For like reasons, the direction that Elias Cole's executors and George W. Cole should account for the rents and the proceeds of sales of other tracts, conveyed to them respectively by Mulford Cole, is erroneous. The conveyances were correctly held to have been given as security for loans made or liabilities incurred. There is no pretence of fraud with respect to any of them. Moreover, it appears that all the lands conveyed thereby had been sold by the grantees, with the concurrence of Mulford Cole. The sales were fairly made and their proceeds were applied to the purposes for which the lands were pledged. The grantees or mortgagees were thus paid off and satisfied, and the transactions were closed by the act of the parties. In the absence of fraud or mistake neither Mulford Cole, nor any one representing him, can require the transactions to be opened and restated.

The result is, that none of the transactions in this class were correctly dealt with by the decree.

The remaining part of the decree to be considered is that which set aside the mortgage for $3,000, made by Mulford to Elias Cole.

The bill charged that this mortgage was without consideration, and made to defraud creditors. The answer denied the intent charged, and averred that it was made for the purpose of being assigned to Emeline D., wife of Mulford Cole, and that it was assigned to her on the day after its execution, to secure to her repayment of two loans of $1,500 each, made by her to her husband.

The only evidence respecting this transaction comes from Mulford Cole, when called as a witness by respondents' testator. He declares that, in 1855, his wife obtained about $1,600 on account of her share of her father's estate, and in 1865 about the same amount from the same source, and that on each occasion she let him have $1,500. He says that he gave the mortgage in question because she wanted security for the amounts he had thus received.

Cole *v.* Lee.

This evidence is uncontradicted. There is indirect corroboration of his statement in proof that the estate of Mrs. Cole's father was divided about the times, and in shares of about the amount, he stated. I can find no ground to reject this evidence, and I conclude, that it proves that Mulford Cole received $3,000 of his wife's money at the times named.

It is well settled that, on proof that a husband has received his wife's money, a court of equity will compel him and his representatives to account to her at least for the principal received, and they can only discharge themselves by showing that the husband disposed of the money according to the wife's directions, or that it was a gift to him. *Horner* v. *Webster, 4 Vr. 387; Black* v. *Black, 3 Stew. Eq. 215; Vreeland* v. *Vreeland, 1 C. E. Gr. 512; Clawson* v. *Riley, 7 Stew. Eq. 348; Greiner* v. *Greiner, 8 Stew. Eq. 134, 140; Jones* v. *Davenport, 17 Stew. Eq. 33; Rusling* v. *Rusling, 18 Vr. 1.* Such liability to account for the wife's money would afford a consideration sufficient to support a mortgage made by the husband to a third person, for the purpose of being transferred to the wife for her security.

Creditors of the husband, who seek to recover their debts out of his property, may doubtless prove, in any such case, that the wife's money was delivered to the husband with intent to invest him with ownership and property therein. A gift by the wife to the husband may be inferred from circumstances. Proof that a wife permitted her husband to use her money in his business; that nothing occurred at the time he received her money to indicate that the transaction was intended as a loan; that afterward no interest was demanded or paid, and nothing was done to indicate liability, has been thought sufficient to justify the inference that the transaction was a gift. The case of *Luers* v. *Brunjes, 7 Stew. Eq. 19,* affirmed in this court *7 Stew. Eq. 561,* and the other cases cited below, were decided on proofs of such circumstances.

The creditors in the case before us have produced no such proofs. Their case, in this respect, can only stand on the ground that the mere fact that Mulford Cole obtained this money from his wife, raises a presumption that she gave it to him, which pre-

sumption will prevail unless she overcomes it by proof that the transaction was a loan.

Such a presumption does not arise in favor of a husband or his representatives, at least as to the principal of the wife's money. Mr. Perry says: "As all transfers from the wife to the husband are somewhat suspicious, by reason of the relation and the danger of some secret influence, gifts of the capital sum are not presumed in the first instance." *Perry on Trusts* § *679.* In *Vreeland* v. *Vreeland, supra,* it was shown that a wife, who had received a bond for her share of her father's estate, permitted her husband to collect the bond and invest the money in his own name, and Chancellor Green held that those circumstances did not afford evidence of a transfer of the wife's property therein to her husband, and his representatives were decreed to account for the money.

When claims of a wife upon her husband come in conflict with claims of his creditors, the transaction out of which her claims arise ought, doubtless, to be scrutinized with great care, because the marital relation and influence afford opportunity for the fabrication of such claims. Therefore, clear proof ought to be exacted of the reception by the husband of the wife's money. But when that fact is established beyond dispute, creditors can occupy no better position in the contest than the husband or his representatives. In order to resist the wife's claims with effect, each must show that the liability to account for her money, arising from its reception, either does not exist, because she gave the money to her husband, or has been discharged by the appropriation of the money in accordance with her directions.

The creditors in the case in hand were required to show, in order to sustain their charge, that this mortgage was wanting in consideration. Their proofs show the husband's liability to account for his wife's money received by him, which would be a sufficient consideration. In the absence of proof tending to show that the wife had parted with her property therein, she was not called on to show that the transaction was not a gift. In the absence of proof tending to show that her claims had been other-

Cole *v.* Lee.

wise discharged, she was not bound to establish their continued existence.

Nor is there evidence that this mortgage was accepted with a design to defraud creditors. Elias Cole, to whom it was made, testifies that he did not think his father was insolvent until his assignment was made, which was some time after the date of the mortgage. He was the mere intermediary through whom the mortgage was designed to be assigned to Emeline D. Cole, and there was no testimony that she knew of the financial condition of her husband at the time she received the assignment, if he was, in fact, then insolvent.

For these reasons, the mortgage has not, in my judgment, been successfully attacked by the proofs.

The result is, that I have not been able to discover any part of the decree which is justified by the proofs, and I shall, consequently, vote for its reversal.

The question raised as to the propriety of the decree upon the pleadings, is one of some importance. The case on this point somewhat resembles *Arnold* v. *Hagerman, 18 Stew. Eq. 186.* But, in that case, there was a specific prayer in the bill, which a majority of this court thought sufficient to justify relief of the same kind as that granted in this case. Here, however, there is only one specific prayer, and that is for a kind of relief entirely inconsistent with the case made by the bill, and which could not have been granted upon the proofs. But since the case has been determined by the result already reached, it has not been thought necessary to determine this question.

*Decree unanimously reversed.*