BRIDGET SMALL et al.

*v.*

CATHERINE PRYOR et al.

[Decided July 6th, 1905.]

1. Where, in a suit for partition, decedent's widow filed a cross-bill, claiming the property under a resulting trust, on the ground that, though she had furnished the purchase price, the title was taken in the name of her husband, she was not rendered incompetent to testify to the circumstances of the purchase and the source of the money by the provision of the Evidence act (*Rev. 1900 p. 363 § 4*), excluding testimony of a party to a civil action as to any transaction with or statement by any testator or intestate represented in the action where any party sues in a representative capacity.

2. Prior to the act of 1874, the earnings of a married woman, even in equity, belonged to her husband, unless, by some clear and distinct act, he had evidenced an intention to hold them as trustee for her separate use.

On bill, answer, cross-bill, replication and proofs.

*Mr. Patrick H. Gilhooly,* for the complainants.

*Mr. Edward Nugent* and *Mr. Samuel Schleimer,* for the defendant Catherine Pryor.

EMERY, V. C.

John Prior (or Pryor) died intestate on May 29th, 1904, seized in fee of a lot of land in Elizabeth, upon which was erected subsequent to its purchase a building used as a saloon and for dwelling purposes. He left surviving him a widow, the defendant Catherine Pryor, and as his heirs-at-law a sister, Mrs. Mary Hogan, and also a niece, Bridget Small, the complainant, the child of a sister who predeceased him. Mrs. Small filed a bill for partition of the premises against Mrs. Hogan and the widow, claiming an undivided half interest in the premises, subject to the widow's dower. After the filing of the bill, Mrs. Hogan and her husband conveyed to the widow their estate and interest in the premises, and Mrs. Hogan having subsequently died, the suit has been revived and now proceeds against the widow as the sole defendant. Mrs. Pryor files an answer and cross-bill admitting complainant's legal title, but alleging that in equity it is held in trust for her, upon the ground that the property which was purchased in January, 1870, was bought with her money, and that the deed was made out in her husband's name by mistake, it being the intention of the parties that it should be made in her name. A mortgage to secure $550 was given to one Mrs. Rafe, an aunt of Mrs. Pryor, shortly after the purchase, to secure the money borrowed by Mrs. Pryor to make, or assist in making, the purchase, or putting up the building, and the cross-bill alleges that the mortgage was subsequently paid by Mrs. Pryor, with her own money, earned by her own work. She further alleges that until the death of her husband she supposed the property was in her name. The complainant denies these allegations, and claims that the money used for the purchase was the husband's money; that there was no mistake in making the deed in the husband's name, and that the money raised to pay the mortgage was the husband's money. The issues of fact in the case made by the cross-bill and replication are whether the land was purchased with the money of the wife, and whether the deed was made to the husband by mistake. The principal question relates to the source of the money, for if it is clearly proved that the property was purchased with money belonging

to the wife as her separate estate, and there is no satisfactory proof that a gift to the husband was intended, the husband, or his estate, must 'account to the wife for the principal at least. *Cole* v. *Lee, 45 N. J. Eq. (18 Stew.) 779, 785 (Court of Errors and Appeals, 1889)* ; *Adoue* v. *Spencer, 62 N. J. Eq. (17 Dick.) 782, 793 (Court of Errors and Appeals, 1900)*. And if the entire purchase-money was paid from the wife's separate estate, a resulting trust in her favor would arise, in the absence of proof that a gift or loan was intended, and the legal title will be considered to have been taken in trust for the wife, whether the title to the husband was taken intentionally or by mistake. If a trust is satisfactorily established by the proofs, it may be decreed under the general prayer for relief on the cross-bill, even though the charge of mistake is not proved. The evidence relating to the circumstances of the purchase and the source of the money comes from the widow herself, and is not satisfactorily corroborated in any important particular. The competency of her evidence on this point, relating as it did mainly to statements or transactions with the intestate, was objected to as inadmissible under the statute. *Evidence act, Rev. 1900 p. 363 § 4.* Under the previous decisions controlling the question in this court, and examined by me at some length in *McKinley* v. *Coe, 57 Atl. Rep. 1030 (1904)*, it was admitted, following *Crimmins* v. *Crimmins, 43 N. J. Eq. (16 Stew.) 86 (Vice-Chancellor Van Fleet, 1887)*, approved by the court of errors and appeals in *Smith* v. *Smith, 52 N. J. Law (23 Vr.) 207, 210 (1889)*. But, although admissible, evidence of this character, which has the effect of disinheriting the heir, must be clear and satisfactory, and under ordinary circumstances should be corroborated. In the present case the defendant's evidence is not sufficient to establish a case of trust, by reason either of the purchase of the property, or the subsequent payment of the encumbrance with her own money. The parties were married in the early sixties, the husband at the time of his marriage being an employe of a railroad company, earning about $1.50 a day. The wife was a woman earning her own living as a servant or in domestic labor. Neither she nor her husband had any

money at the time of the marriage. After the marriage she worked as a laundress for $1.25 a day. She says that by the time of the purchase she had earned $500, which she saved, and most of it she put into a bank called "Halsey's Bank." With this money her husband, as she says, bought the lot. The deed is dated January 15th, 1870; was recorded January 19th, 1870, and the consideration price named in the deed is $500. Her statement as to the money for the purchase coming from Halsey's bank fails wholly of support, and would seem to be altogether a mistake, for it appears by the deposit-book, which is produced, that this deposit (amounting in all to $637.91) was not made until years later (1884-1887), and was closed out on September 10th, 1887, about the time when another lot was purchased in the joint names of herself and husband for $900. This evidence of the wife that all of the money which went into the purchase was money earned by her and saved is too indefinite and unsatisfactory to be made the basis of a decree that her separate estate alone purchased the property, even if money earned by her own labor was, at the time of the purchase, her separate estate. But the purchase of the lot, and also the payment of the mortgage of $500, was previous to the statute of 1874 (*2 Gen. Stat. 2013* § *4*) giving to a married woman her wages and earnings as her separate property. At the time when these earnings, or any of them, were so invested, the rule of the common law prevailed, and even in equity the earnings of the wife belonged to the husband, unless he had divested himself of them by some clear and distinct act by which he held or engaged to hold them as trustee for the wife's separate use. *Skillman* v. *Skillman, 13 N. J. Eq. (2 Beas.) 403, 407, 409 (Chancellor Green, 1861)* ; affirmed, *15 N. J. Eq. (2 McCart.) 478, 481 (1863)*. Payment of her earnings to the wife and her retention of them by her husband's consent, or the investment of them in her name, might, if satisfactorily proved, be sufficient evidence of a gift to divest the husband of his right. *Peterson* v. *Mulford, 36 N. J. Law (7 Vr.) 481, 487 (Court of Errors and Appeals, 1873)*. But in several cases decided in equity while this rule of the common law was in force, it was held that the invest-

39

ment by the wife of money received by her for her earnings in the purchase of property in the husband's name, or in the payment of encumbrances on such property, tend to show that the earnings were not held as her separate estate, but as the common fund for the husband's use or the payment of his debts. In *Skillman* v. *Skillman, supra* (at *p. 481*), the wife's earnings were used to pay off the mortgage on property in the husband's name, and in *Persons* v. *Persons, 25 N. J. Eq.* (*10 C. E. Gr.*) *250, 259* (*Chancellor Zabriskie, 1874*), to purchase property in the husband's name.

In the present case the purchase of the lot was undoubtedly made with the intention of building on it a home, and a loan of $550 for the purpose was procured in February, 1870, from Mrs. Pryor's aunt. To secure this loan the husband gave his bond, the wife not joining, and a mortgage was executed by both. On August 17th, 1871, $375 for principal and interest was paid, the receipt of Mrs. Rafe (the mortgagee) stating it to have been paid by John Pryor. On February 19th, 1876, full satisfaction was acknowledged, but the receipt does not state from whom it was received. After Pryor commenced keeping a saloon in 1880, additions were made to the building and portions of the premises were rented. The wife says that she earned all the money to make the large addition (about $1,200) by working out, but there is no corroboration of this, and it seems more probable that the money for the additions came from the business, which was carefully and industriously carried on. The wife's sole evidence is not sufficient to overcome this probability. She assisted her husband in the saloon apparently during the whole time it was carried on, and herself collected the rents. She seems for the most part to have taken charge of the money and to have paid the bills, but the business was the husband's, and her services and assistance of her husband in the business cannot be considered as making the subsequent additions the proceeds of her separate estate. The claim of mistake in the deed is not at all made out. The husband, from the year 1880 to his death, carried on a saloon in the premises, took licenses annually in his own name, himself made the

contracts for additions to the buildings, and purchased the material, insured and was taxed for the property in his own name, and his wife paid both insurance and taxes. I do not give much credit to the wife's present statement that she did not know the property stood in her husband's name, especially after he commenced keeping a saloon. The method and exigencies of this business carried on in the husband's name probably required, as both of them knew, that the property also should be in his name. Giving all proper weight to the wife's evidence, I think the case is one which shows that the earnings of both husband and wife contributed to the original purchase of the property and the erection of the first building upon the premises, and that after the saloon business was commenced, the profits of that business, which was carried on mainly, if not altogether, by these persons alone, was the principal source of their further earnings. The husband, as well as the wife, up to the latter part of his life at least, appears to have been industrious and saving. A later purchase, made in 1887, was taken in their joint names, and had the purchase now in question been taken in the same manner, it would probably have been more equitable. But the question for decision now is whether, when the purchase in question was made, it was made solely with the money or separate estate of the wife, and is therefore in equity property held in trust for her by the husband's heirs.

I do not think that there is in this case any such clear and satisfactory proof as will justify finding such trust to exist.

The cross-bill will therefore be dismissed and a decree for complainant advised on the bill for partition.