The bill in this cause is filed to establish a trust in favor of the complainant in certain lands located in the borough of Keyport, Monmouth county, New Jersey, of which her late husband, Rosoleno Vigne, died seized, and also in certain bank accounts and other personal property standing in the name of her deceased husband at the time of his death and now in the possession of defendant Joseph Vigne as his executor.
This suit was originally begun in the supreme court, and, on motion to dismiss the proceedings on the ground that the suit involved a contract between husband and wife, it was transferred to this court. The case was fully tried before the late Vice-Chancellor Foster, and he was awaiting briefs at the time of his death. It was afterwards referred to me on the pleadings and the record of testimony. At my suggestion some additional testimony was taken, but this did not prove to be very helpful or of any particular advantage to either side.
At the time of the death of Rosoleno Vigne he held title to two parcels of real estate in Keyport, Monmouth county, *Page 276 
New Jersey, one of which was purchased from Samuel Brown and wife in 1919 for a consideration of $2,800, and the other of which was purchased in 1920 from Loretta B. Wilson and husband for a consideration of $2,650. The complainant alleges that she furnished the money for the purchase of the Wilson property and that title was taken in her husband's name without her knowledge or consent, and that she did not know that title to that property stood in his name until after his death. She makes no claim to the Brown property, admitting that that was purchased by her deaceased husband with his own funds. At the time of his death decedent had on deposit in his own name in the Seamen's Savings Bank in New York the sum of $2,974.44; in the Emigrant's Industrial Bank of New York the sum of $3,150.94; in the Irving Savings Bank of New York the sum of $3,242.39, and in the Keyport Banking Company at Keyport, New Jersey, the sum of, approximately, $3,500. He also had Liberty bonds in the amount of $1,000, all of which were registered in his name. The four bank accounts above mentioned were all savings accounts. Decedent also had on deposit in a checking account in the Keyport Banking Company at the time of his death, approximately, $1,000. The total value of his estate was about $20,000. Complainant claims that practically all of this estate, except the Brown property and the money in the checking account, is charged with a trust in her favor. Complainant also alleges that all of the moneys which were deposited in the various bank accounts of her husband, excepting the checking account in the Keyport Banking Company, were her moneys, saved by her from her business, and that she was unaware of the fact that the accounts were in her husband's name until after his death. There is no specific mention of the Liberty bonds in the bill of complaint, but on the trial of this cause the complainant claimed them as having been purchased with her money. Complainant also alleges that the business of her husband was small and unprofitable, and that it would have been impossible for him to have accumulated so large an estate from his own business. *Page 277 
On behalf of the defendants it is claimed that the business of complainant's husband was profitable; that he was frugal and saving, and all of the money here in dispute was accumulated by him as the result of his own labors; that if any money was at any time paid over to him by complainant it was intended as a complete gift; that all of the earnings of his wife became the property of the husband by virtue of the laws of this state; that the failure of complainant to assert her rights to the bank deposits from 1909 until after the date of her husband's death constitutes such laches as to now bar the claim; also, that whatever claim the complainant has is barred by the statute of limitations.
Obviously, there is nothing in the three defenses last mentioned. Since the Married Women's act of 1884 a wife has been entitled to her earnings from her separate business or estate. If a trust arose as to the bank accounts under the facts as alleged, there would have been no laches. Also, if a trust was imposed upon the property claimed by the complainant, it would not be barred by the six-year statute of limitations.
The evidence shows that the complainant and Rosoleno Vigne were married on October 22d 1905, and that they lived together at Keyport, New Jersey, until his death, on May 25th, 1921. Prior to the marriage, complainant had conducted a small store at Keyport, where she sold candy, cigars, bread, cakes, pies, ice cream, c., but she discontinued this business just before the marriage. She testified, and this is undisputed, that on the date of the marriage she had saved, approximately, $800. She also testified that her husband was without financial means at the time of the marriage. Bank statements introduced on behalf of the defendant show, however, that Rosoleno Vigne had a bank account prior to November, 1905, and that in November, 1905, he had a balance of $875 on deposit. He had been employed by a railroad company at a small salary previous to that time. After the marriage complainant re-engaged in the store business, opening a new store in the first floor front room of the house occupied by the parties as a home, and *Page 278 
shortly thereafter Mr. Vigne obtained employment in selling teas, coffees, spices, extracts and butter substitute over a considerable territory in Middlesex and Monmouth counties, which he covered first by means of a horse and wagon and later by an automobile. For the purpose of his business he used one side of the store, while the complainant, for her business, used the other side. It is alleged by the complainant that the business conducted by her was her own separate business, conducted for her own benefit. There was no testimony challenging this statement, and it must be accepted as a fact that the business conducted by her was her own separate business. By his will Rosoleno Vigne left all of his property to the complainant for life, and on her death to his brothers and sister-in-law.
It is a settled principle of law that where one buys property with another's money and takes title in his own name, a trust in favor of the one furnishing the consideration results. Cutler
v. Tuttle, 19 N.J. Eq. 558; Read v. Huff, 40 N.J. Eq. 229;Mayer v. Kane, 69 N.J. Eq. 733; Yetman v. Hedgeman, 82 N.J. Eq. 221.
Where the person furnishing the money and the person taking the title are strangers there is a presumption of a resulting trust in favor of the person furnishing the money, but where the parties hold to each other the relation of parent and child, or husband and wife, a contrary rule prevails. Reed v. Huff,supra.
But nothing short of certain, definite, reliable and convincing proof will justify the court in divesting one man of title to lands evidenced by a regular deed and putting it in another.Midmer v. Midmer's Executors, 26 N.J. Eq. 299.
This doctrine of resulting trusts in all of its phases applies alike to personal and to real property. 3 Pom. Eq. Jur. § 1038p. 2353.
It is also well settled that "on proof that a husband has received his wife's money a court of equity will compel him and his representatives to account to her at least for the principal received, and they can only discharge themselves by showing that the husband disposed of the money according *Page 279 
to the wife's directions, or that it was a gift to him." Cole
v. Lee, 45 N.J. Eq. 779.
"But a gift by the wife to the husband may be inferred from the circumstances" (Ibid.), and where a husband receives money from his wife for investment for her he becomes her trustee. Tresch
v. Wirtz, 34 N.J. Eq. 124.
See, also, Adoue' v. Spencer, 62 N.J. Eq. 782, and Small
v. Pryor, 69 N.J. Eq. 606, for further application of the rule respecting trusts arising between husband and wife. It also seems to be the general rule that "if the wife voluntarily permits her property to be so mixed with the husband's that it cannot be distinguished, she will be estopped from claiming the same as against his creditors, or persons claiming under him." 30 Corp.Jur. 832, and cases therein cited.
There is little dispute here between counsel as to what the law is on the questions here involved. It appears to me that this is peculiarly a fact case, and I shall, therefore, discuss the evidence as related to the various items of property claimed by the complainant under the following heads:
1. Wilson property.
2. Bank accounts.
3. Liberty bonds.
 1. WILSON PROPERTY.
The complainant testified that this property was purchased with her money; that when the agreement of purchase was made it was made in her store, and that she then went into the room in the rear of the store and took $100 in cash from a tin box in which she kept her savings and paid it over to the Wilsons; that her husband was present at this transaction; that later, when settlement was made, she gave the balance of the purchase price to her husband. Mr. and Mrs. Wilson testified that they saw the complainant go into the room in the rear of her store on the day the agreement was made and bring out $100 in cash, which she gave Mrs. Wilson *Page 280 
and her husband as a down payment under the contract. Other than this there is absolutely no corroboration whatever of the complainant's story. The lawyer in whose office the settlement was made testified that the complainant was not present at that time; that he does not remember whether payment was made by check or in cash, but that settlement was made by him pursuant to instructions from complainant's husband; nor do either of the Wilsons testify as to whether or not the final payment was made in cash or by check, or who made it, except that they say the final payment was made in the lawyer's office when settlement was made. As the complainant was not there at that time, it must be assumed that the final payment was made by the complainant's husband. There is nothing in this case except the complainant's own testimony to indicate that the money which was paid on the final settlement was her money.
In complainant's brief stress is laid upon the testimony of Mr. and Mrs. Wilson respecting the statement of Mr. and Mrs. Vigne that the property was being acquired as a home for Mrs. Vigne, the complainant. It will be noted that under the will this property becomes Mrs. Vigne's for her lifetime, so, that the statement attributed to Mr. Vigne, that it was being bought as a home for his wife, is not inconsistent with the purchase having been made by him with his own money or with her having consented to the title being taken in his name, even if she did pay for it. The witness also testified that the negotiations were with both Mr. and Mrs. Vigne, and, apparently, one had as much to say about the matter as the other. To my mind the proof with respect to this property falls far short of that "certain definite, reliable and convincing proof" which would justify this court in finding that this property was purchased with the complainant's money, the title taken in her husband's name without her knowledge, and that a trust in her favor, therefore, results. I, therefore, hold that the complainant has no interest in this property other than that which she takes under the will. *Page 281 
 2. BANK ACCOUNTS.
With respect to the three bank accounts in New York savings banks, complainant's testimony is that she gave her husband the moneys which were deposited in these banks to deposit for her in her name. She also testified that as soon as the money was deposited in each of the banks the bank books were brought to her by her husband and that she had possession of them, except when other deposits were made, down to the time of the death of her husband. Aside from this the testimony respecting these accounts is very meagre. One witness stated that Mr. Vigne told him one morning many years ago that he was going to New York to do some banking for his wife. How much money he was taking, to what bank, or whether it was to make a deposit, a withdrawal or what, the witness does not state. One other witness testifies that on one occasion he saw Mr. Vigne have a bank book which he believes was the Seamen's bank book, and that Mr. Vigne then stated "that is Vi's money," "Vi" being the complainant. Another witness, Mr. Polling, testifies that Mr. Vigne, on one occasion, told him that he was taking some money to New York to put in a savings bank, and that the money came from his wife's (the complainant's) money in the building and loan. Obviously, this is not so, because the complainant herself testified that when, in the latter part of 1918, her stock in the building and loan association matured, she deposited the proceeds of that stock in the Keyport Banking Company to her own account, and Exhibit D-6, which is a copy of the bank's record of that account, shows that this is so. This witness, therefore, was, in my opinion, drawing largely upon his imagination. As to the savings account in the Keyport Banking Company, complainant testifies that she herself opened this account in her husband's name; that she made all the deposits therein except possibly a few made by her husband for her; that she spoke to her husband about the account being in his name, and he told her it would be all right, that on his *Page 282 
death she could withdraw the money the same as though it were in her name, and that he had made arrangements with the bank to that effect. This is the sole testimony with respect to this account. Obviously, as complainant herself opened the account, whatever arrangements with reference thereto were made with the bank were made by the complainant herself and not by her husband. The complainant had a bank account before her marriage and she had a bank account in the Keyport Banking Company in 1918, and from then until after her husband's death, in her own name, so that she must have known that there was a difference in a bank account in her name and one in the name of her husband. Admitting, for the sake of argument, that the money deposited in this account was complainant's, there is sufficient in these circumstances to infer a gift to her husband. Complainant claims that all of her receipts and earnings from her business were kept by her in a tin box, which she hid under the floor of the house in which they lived, and that she had as high as $2,000 in this box at a time; that from time to time she would take various sums from the box, give them to Mr. Vigne for deposit in her account or deposit them herself in the Keyport Banking Company in the account opened in Mr. Vigne's name, a rather unusual practice, when there were at least six bank accounts maintained by this family during all or a part of their married life. I cannot believe her statement that she was unaware of the fact that the moneys in the New York banks were deposited in the name of her husband until after his death. According to her own testimony she had exclusive possession of the bank books after the accounts were opened, except when other deposits were made, and must have seen that these books bore her husband's name and not hers. Her testimony on this phase of the case is vague and uncertain as to dates or amounts of deposits, and the testimony of admissions on the part of the deceased husband, which were admitted as corroborative of the complainant's testimony, is unconvincing and uncontrolling. The proof here, in my judgment, also falls short of that "certain definite, reliable and convincing *Page 283 
proof" necessary to establish a trust in favor of the complainant. I hold, therefore, that the bank accounts here in dispute belong to the estate of Rosoleno Vigne.
 3. LIBERTY BONDS.
As to the Liberty bonds, complainant testified that they were purchased by her with her own money; that after the purchase she kept them either in the tin box above referred to or in a small safe; that they were at first unregistered; that she collected interest thereon by having her husband clip coupons therefrom for one or more interest periods, and that on one occasion, when she gave the bonds to her husband to collect the interest for her, he took them away, had them registered in his own name without apprising her of that fact, and then returned them to her; that she had had possession of them from that time down to his death, when she discovered that the bonds were registered in his name. She also stated that she purchased them at the bank in Keyport, but she could not name the official or employe of the bank from whom she purchased them, and no official of the bank was produced to testify on this important point. At another time she stated that she gave the money with which these bonds were purchased to her husband with instructions to buy the bonds for her, which he did. She was uncertain as to the denomination of the bonds, testifying at one time that five of them were in the denomination of $100 each and one in the denominataion of $500; that there were six purchases made; and on another occasion she testified that there was one bond of $100, two bonds of $200 each and one bond of $500, and that there were four purchases made. Aside from this, there no testimony whatever respecting these bonds. The burden of proof being on the complainant, and there being no corroboration of her testimony, I do not feel that the evidence is sufficiently convincing to warrant the court in charging these bonds with a trust in her favor. I hold them to be the property of the estate of Rosoleno Vigne. *Page 284 
There was considerable testimony introduced in this cause which might be said to apply generally to all of the property which the complainant now claims. The complainant testifies that the business of her husband was inconsiderable; that his earnings were small, and that they amounted to from $15 to $18 a week. She also testifies, however, that her husband paid practically none of the living expenses of the family except a portion of the rent. Other witnesses testified to the amount of business done with the various firms which they represented, all of this testimony being introduced for the purpose of indicating to the court that it would have been impossible for the complainant's husband to have accumulated from his own business an estate so large as that which was apparently his at the time of his death. It is significant, however, that one witness testified that Mr. Vigne's profits from the sale of butter substitute alone over a period of seven months was, approximately, $700, and, not being subject to much expense, it is clear that he had an opportunity to save a large part of his earnings. There was also testimony indicating that he had been engaged in the selling of butter substitute for a period of twelve or fourteen years prior to his death. On the part of the defendants it is shown, however, that during the period from 1905 to 1910 complainant's husband had deposited in his checking account in the Keyport Banking Company a sum in excess of $84,000, apparently the proceeds of the business in which he was engaged. It does not seem to me, therefore, impossible that the deceased should have saved a matter of $20,000 in sixteen years. On the facts alone, as they are presented by the record, and giving the testimony the fullest probative force, I am convinced that the complainant is not entitled to the relief asked. However, there are circumstances here which to my mind indicate that very little probative force should be given to the testimony of complainant, and the case is very largely made up of her testimony. That testimony relates mainly to transactions between complainant and her deceased husband. This suit is brought by her against her *Page 285 
husband's executor. It is settled in this state that "in establishing her claim against her husband's estate a wife is not more competent to testify to transactions with, or statements by, the testator or intestate, when the executor or administrator of her deceased husband is a necessary party, than any other witness" (Adoue' v. Spencer, supra), and the test to be applied to testimony of this character, as I understand it, "is to inquire whether in case the witness testified falsely the deceased, if living, could contradict it of his own knowledge."Smith v. Burnet, 35 N.J. Eq. 314; Van Wagenen v. Bonnot,74 N.J. Eq. 843; Campbell v. Akarman, 83 N.J. Law 567. If so, such testimony is excluded, the cases holding that where the voice of one of the parties is silenced by death, that of the other must be by law.
Applying that rule to much of the testimony of the complainant in this suit, it will be found that if complainant's husband had been present when it was given he could have denied it. For instance, the testimony to the effect that she gave her husband money with which to make the final payment on the Wilson property could have been denied by him. Her testimony to the effect that she gave her husband the moneys which were deposited in the New York banks to be deposited to her credit could have been denied by him. Her testimony to the effect that she gave her husband money with which to buy Liberty bonds could have been denied by him. Stripped of this evidence, how can the complainant's case stand? As I read the transcript the testimony which I have questioned was admitted by the late Vice-Chancellor Foster only tentatively, over objection, and subject to being stricken from the record on application. I find no record of any motion to strike, and no such motion was made before me. The testimony being in the case, although over the objection of counsel for defendant, it must be considered, but the weight to be given to that testimony is a matter for me to decide, and, while not basing my decision on the inadmissibility of this testimony, I mention it to indicate that, in my judgment, very little weight ought to be given to it. *Page 286 
"Evidence of this character, which has the effect of disinheriting the heirs, must be clear and satisfactory, and, under ordinary circumstances, should be corroborated." Small v.Pryor, supra.
But there is still another circumstance in this case which is worthy of consideration in passing upon the weight which is to be given to the testimony of the complainant. It appears from the testimony and exhibits that the complainant herself was made the executrix, and her brother-in-law, the defendant Joseph Vigne, was made the executor of her husband's will. After her husband's death she participated in the probate of the will and later filed a claim against the estate for services rendered her husband during his lifetime. This claim is made under oath, and is as follows:
"Viola Vigne, Executrix and Joseph Vigne, Executor of the last will and testament of Rosoleno Vigne, deceased,
Drs. to Viola Vigne.
During the lifetime of said decedent this claimant at decedent's request performed work and services in the management and conduct and operation of the business of selling teas, coffees, candies, stationery and tobacco, located at 187 First Street, Keyport, New Jersey, and in consideration thereof the said decedent did promise and agree to pay this claimant one-half of the net profits of said business. This claimant devoted her entire time to the management of said business from about June, nineteen hundred and six, until decedent's death May 25th, 1921. That during said period of time the net profits of said business amounted to approximately fifteen hundred dollars annually and no part thereof was ever paid to this claimant. At the time of decedent's death his estate amounted to approximately twenty thousand dollars as nearly as can be ascertained at this time, and which is made up exclusively of the net profits of said business and which amount this claimant under her agreement with said decedent is entitled to one-half. Therefore claimant makes this claim against said estate in the sum of ten thousand dollars with such interest as the law may allow.
Dated October 19th, 1921. VIOLA VIGNE.
STATE OF NEW JERSEY, | ss.
COUNTY OF OCEAN, |
Viola Vigne, being duly sworn upon her oath according to law, deposes and says that she is the creditor in the foregoing claim mentioned, *Page 287 
that the services therein mentioned were performed in said partnership business at the times and at the terms in the foregoing claim named; and deponent further says that no part of the foregoing claim has been paid, but that the whole sum of ten thousand dollars therein named is justly due and owing to her.
VIOLA VIGNE.
Subscribed and sworn to this 19th day of October, 1921, before me VIOLA E. PATTERSON, Notary Public of N.J."
It will be noted that in this claim the complainant avers that under the arrangement with her husband she was entitled to one-half of the profits of the business conducted at 187 First street, Keyport, New Jersey (which was their home), and makes no distinction between the business of her husband and her own, referring to the business as a partnership. She also alleges that the net profits of this combined business were about $1,500 a year.
This claim was prepared by a reputable and capable lawyer to whom the attorneys of the estate referred her after the probate of the will. It is under oath. This lawyer testified that he prepared the claim from statements made and information given to him by the complainant, and that the claim correctly recited the facts as stated by her, and that it was fully explained to complainant before she swore to it. Obviously, it is inconsistent with the claim of complainant now presented in this suit. The claim being disputed by the estate, complainant's then attorney began the suit in the supreme court referred to at the beginning of this opinion, based on a claim for the reasonable value of services alleged to have been rendered by the plaintiff to her husband during his lifetime. After that suit was transferred to this court an amended bill of complaint was filed here, in which it was claimed that there was due the complainant the sum of $10,000, with interest, for moneys of the complainant paid by her to her husband, during his lifetime and unlawfully retained by him. That amended bill was evidently based upon a state of facts different from both that alleged in the claim filed with the executor and the complainant in the *Page 288 
supreme court. Subsequently, the solicitor who instituted the suit in the supreme court, and who also filed the first amended bill of complaint in this court, withdrew from the case. The present solicitors of complainant were thereupon substituted, and they filed another amended bill of complaint based upon the theory that practically all of the estate of the complainant's husband was held by the defendant-executor in trust for the complainant. This is the bill now under consideration. It will be noted that neither in the claim originally filed with the executor of the estate, in the suit instituted in the supreme court, nor in the first amended bill of complaint filed in this court, was there any mention whatever of the Wilson real estate having been purchased with the moneys of the complainant; nor did she claim any interest therein. The whole theory of the present bill seems to have been an afterthought. I believe that if the complainant had originally had any such claim in mind as is stated in the final bill of complaint filed in this cause, she would have stated the facts alleged in that bill to her first solicitor, and I am further of the opinion that if these facts had been disclosed to him he would not have prepared the original claim filed with the executor or the complaint in the supreme court. His standing at the bar excludes from my mind any idea that he could not distinguish between a claim based on services and one based upon the theory of a resulting trust. The facts necessary to support the one would be essentially different from those required to support the other. If the facts as alleged in the present bill are true the question arises, why did the complainant not tell these facts to her first solicitor? On the whole, I do not feel that the complainant is entitled to a decree, and I will advise a decree dismissing the bill of complaint. *Page 289