The complainant, husband of the defendant, seeks to impose a trust to the extent of $20,000, upon a mortgage for $60,000 held by her upon premises 929 Cottage Place, Union City, New Jersey, for money advanced by him prior to their marriage, which took place in July, 1928. The complainant, who had been a clothes operator, had saved the sum of $20,000, which he deposited in Boston, Massachusetts, banks. He had been receiving interest at the rate of four per cent. upon his deposits. In the month of December, 1927, he and the defendant discussed investments in mortgages. He seemed to be impressed by the defendant's account of her success as an investor in mortgages, with the result that he went to Boston and withdrew his money from the banks and gave it to her, as he maintains, to invest in mortgages. He paid her the money as follows: December 29th, 1927, $4,170.13; January 27th, 1928, $14,881.86; April 14th, 1928, $122.08; April 17th, 1928, $138.57;, all of which totals $19,312.64. The defendant deposited these several amounts in a bank in her own name. She says the complainant gave her the moneys to invest in stocks of the Maryland Casualty Company and not in mortgages. She bought one hundred shares of these stocks and paid $18,562.50 for them and took title to the stocks in her own name. The stock market subsequently "crashed" and the defendant sold the stocks, as she alleges, *Page 452 
after receiving complainant's approval, and also upon the advice of the vice-president of her bank, for $2,425. Defendant says, that at the time the stock was purchased, she advanced, on account of the purchase price, the sum of $620.24; and, also, that in April, 1931, she loaned complainant the sum of $2,000, and consequently, complainant is in her debt for $195.42.
Complainant denies he authorized or directed the defendant to invest his money in stocks and alleges that he gave her the money to place upon mortgage security; and that, in effect, he had confidence in her judgment in such matters, based upon her representations to him of her good financial success in those investments and, further, of her announcement to him that he would receive a return of approximately ten or twelve per cent. on his money.
I think the complainant's monetary advancements to the defendant was influenced by her statements, or declarations, of her profitable mortgage investments. He was attracted by her statement of the premiums or bonuses that were paid her, and would be paid for such loans; and, consequently, he decided to augment his income by having her place his money on mortgage security. The defendant advanced $60,000 upon a mortgage on 929 Cottage Place, Union City, about fifteen months after complainant had given his money to her. The owner of that propery, Kaplan, who was called by the defendant, testified that complainant and defendant, and defendant's attorney, Eichmann, examined, or inspected, the property before defendant advanced the money upon the said mortgage; the complainant said defendant told him in April, 1929, his money was in the mortgage on the Cottage Place property. Paikin, a witness called by complainant, said defendant told him she had complainant's money invested "in bricks; in mortgage." The defendant called Fred Eichmann, the attorney, who placed the loan on 929 Cottage Place for the defendant, and he said, on cross-examination, that he heard the defendant say that she could make more than four per cent. for complainant; that she would, or could, invest his money in mortgages and get more in premiums *Page 453 
than the four per cent. The witness for the complainant, Alice Goldstein, said defendant told complainant "he couldn't get much on four per cent.; she could get ten or twelve per cent."
The defendant's testimony about the complainant's desire to invest in stocks, rather than mortgages, is supported by her son. But their testimony is not convincing. Riker v. Riker, 83 N.J. Eq. 198; affirmed, Ibid. 693. In this case Vice-Chancellor Howell, among other things, said: "The only witnesses to the transaction are the parties to the controversy, and they alone are interested. The rights of creditors have not intervened. It was held by the court of errors and appeals, in Cole v. Lee,45 N.J. Eq. 779, to be well settled that on proof that a husband has received his wife's money a court of equity will compel him and his representatives to account to her at least for the principal received, and that they can only discharge themselves by showing that the husband disposed of the money according to the wife's directions, or that it was a gift to him. This presumption is against the husband and casts upon him the burden of proving his defense by a preponderance of testimony." Certainly it cannot be said that in the instant case the defendant has carried the burden which the law has imposed upon her to establish her defense by a preponderance of the evidence. She has fallen far short of it.
The complainant's confidence in the defendant was such that he gave her his entire savings and practically divested himself of his worldly possessions — left himself scarcely without means. Equity does not overlook with indifference such a situation. The language of Vice-Chancellor Church, in Sanford v. Sanford,101 N.J. Eq. 485, wherein he said: "I think the decision of this case should rest squarely on this fact," might be applied. The principle enunciated in this last cited case has been observed inSzpak v. Szpak, 114 N.J. Eq. 143; Fretz v. Roth, 70 N.J. Eq. 764; Selinger v. Selinger, 115 N.J. Eq. 261.
The complainant's alleged delay in seeking relief cannot affect his right to it; and laches will not be imputed under *Page 454 
the circumstances. Bennett v. Finnegan, 72 N.J. Eq. 155; Ward
v. McLellan, 116 N.J. Eq. 308; Reeves v. Weber, 111 N.J. Eq. 454.
Complainant turned over to the defendant the sum of $19,312.64 from which should be deducted the sum of $2,000 given by defendant to complainant in April, 1931; and, also, the sum of $4,000, the sum complainant declared "should be deducted" for "living expenses, European expenses, c.;" thereby leaving a balance of $13,312.64, which I find is due the complainant from the defendant. I do not believe that the premiums paid by defendant upon the policies on the life of complainant were paid from the complainant's money.
I shall advise a decree that the bond and mortgage on 929 Cottage Place, Union City, made by the Dorwill Construction Company to Isaac Weinstein, subsequently assigned to defendant to secure the sum of $60,000 be held in trust for the joint benefit of the complainant and defendant to the extent of the interest hereinabove indicated; and that an account be taken of the moneys delivered to the defendant, and of the rents, issues and profits of the said mortgage, and that the defendant pay over to the complainant his share thereof and that an injunction issue, and that a receiver be appointed as prayed for in the bill.